COLVIN v. JONES.

1. DESCENT AND DISTRIBUTION—REAL PROPERTY—PERSONAL PROP-
ERTY—ESTATES OF DECEDENTS—LAW GOVERNING.
Where the owner of property dies intestate, his real estate
devolves according to the. law of the State in which it is
situated, and his personal property is distributed accord-
ing to the law of his domicile.

2. SAME—PAYMENT OF DEBTS AND TAXES—ESTATES OF DECEDENTS
—CONTROL OF STATE.
The State, by . virtue of its sovereign authority, tempo-
rarily takes charge of the property of a deceased person
for the purpose of ascertaining and paying the debts and
the taxes exacted by the State, and, also, if the State of
the domicile of the deceased person, for the purpose of
assigning the residue of the personal estate to the persons
found to be entitled thereto.

3. SAME—JURISDICTION—ESTATES OF DECEDENTS—STATE COMITY.
The sovereignty of a State and ' the jurisdiction of its
courts over the property of a deceased person do not ex-
tend beyond its territorial limits except so far as is al-
lowed by State comity.

4. SAME—RES JUDICATA—FOREIGN JUDGMENTS—DOMICILE OF DECE-
DENT.
The determination of an Ohio court of the domicile of de-
cedent for the purpose of administering his property with-
in that State was not binding on the courts of this State
in administering his estate located in Michigan.

5. EXECUTORS AND ADMINISTRATORS—JURISDICTION—PERSONAL PROP-
ERTY IN FOREIGN STATE.
While personal property, in contemplation of law, accom-
panies the person of the owner, and on his death its dis-
position is to be determined by the laws of his domicile,
yet where the property is in one jurisdiction and the
domicile in another, distinct proceedings are necessary,
and an executor or administrator appointed in one State
has no authority, as such, in another.

6. SAME—FOREIGN EXECUTOR OR ADMINISTRATOR—STATUTES.

The rights of a foreign domiciliary executor or adminis-
trator are recognized in our statutes. 3 Comp. Laws, §§
9110-9113, 9124, 9323, 9443 (3 Comp. Laws 1915, §§ 13819,
13915, 14020, 14022, 14465).

7. DESCENT AND DISTRIBUTION—EQUITY—PROBATE COURTS—ANCIL-
LARY PROCEEDINGS.

Where there has been no application to the probate court
for administration ancillary to administration proceedings
in a foreign court, and the local probate court was pro-
ceeding regularly to administer an estate found within its
jurisdiction, the court of equity will not interfere with
such probate proceedings nor order the funds in the hands
of the local administrator turned over to the foreign ad-
ministrator.

Appeal from Lenawee; Chester, J., presiding. Sub-
mitted October 20, 1916. (Docket No. 15.) Decided
March 29, 1917.

Bill by Charles H. Colvin, and George H. Crane and
Charles Fox, administrators of the estate of Arthur
P. Crane, deceased, in the State of Ohio, against
George N. Jones, administrator of said estate in the
State of Michigan, and others, for a decree ordering
said defendant to turn over certain funds in his hands
belonging to said estate to said plaintiff administra-
tors for distribution, and other relief. From an order
sustaining the demurrer of defendants with leave to
amend, plaintiffs appeal. Affirmed.

*Herbert R. Clark, Elmer E. Davis,* and *Henry I.
Bowens,* for appellants.

*Hedley V. Richardson* and *Pelton & McGee,* for
appellees Mary F. Power, Fred C. Power, John Power,
Mary Osmus, Charles Power, Blanche P. German, Lem-
uel Power, Josephine Power, and Edwin W. Parker.

*Baldwin, Alexander & Russell* and *Carroll, Kirwin
& Hollway,* for appellees George N. Jones, Lucy R.

Jones, Amy Foster, Charity C. Harkness, Elizabeth Lamb and Abram Powers.

*Fellows & Chandler*, for appellees Mary P. Knapp, Duana Duryea, and William R. Thompson.

It is charged in the bill of complaint that Arthur P. Crane died in the city of Toledo, Ohio, April 28, 1911, being at that time a resident of that city and State, owning both real and personal property in the State of Ohio and in Lenawee county, Mich. He left no children, widow, father or mother, brothers or sisters, nephews or nieces; his nearest relatives being first cousins on his father's side of the whole blood and first cousins on his mother's side of the half blood, and second cousins on his father's side, who were of the whole blood. April 29, 1911, an application was made in the probate court of Lucas county, Ohio, for the appointment of a special administrator of the estate of the said Arthur P. Crane, which set out that he was a resident of said Lucas county, Ohio, at the time of his decease. On the same day an order was made appointing a special administrator to collect and preserve the effects of the said deceased, the said probate court adjudging and determining that said Crane was a resident of said Lucas county when he died. Later May 5, 1911, an application was made in the same court for the appointment of a general administrator, and this application alleged that said Crane was a resident of Lucas county, Ohio, at the time of his decease. Hearing on this application was fixed by the court for the 16th of May, 1911, and a citation was duly issued to the next of kin of said Arthur P. Crane, deceased, to show cause why said application should not be granted. On May 16, 1911, two other applications were filed in said court for the appointment of an administrator of the estate, and on the same day, May 16, 1911, administration of the estate

was duly granted to George H. Crane and Charles Fox, the court adjudging and determining that the said Crane was a resident of Lucas county when he died. One George N. Jones was present at the said hearing May 16, 1911, and took part therein, and Lucy R. Jones, one of the first cousins of the whole blood, was represented there by her attorneys. Meantime, on May 3, 1911, George N. Jones, of Adrian, Mich., was appointed by the probate court of Lenawee county, Mich., special administrator of the property and effects of the deceased in Michigan, the probate court of Lenawee county making no determination as to the residence of the deceased. Later, upon the application of Lucy R. Jones, heretofore mentioned, the said George N. Jones, June 5, 1911, was appointed general administrator of the estate of the said deceased in Michigan by the probate court of Lenawee county; the application for said appointment alleging that said Arthur P. Crane was a resident of Lenawee county, Mich., at the time of his decease, and said court determining, in making such appointment, that Arthur P. Crane was a resident of said Lenawee county at the time of his decease. Said George N. Jones has filed in the probate court for the county of Lenawee a paper purporting to be his final account as administrator of said estate, setting up therein that all debts of said deceased and expenses of administration in Michigan have been paid, that he has in his hands for distribution $9,475.91, and praying that it be distributed to the first cousins of said deceased of the half and of the whole blood. It is further charged in the bill that at the time of his appointment as administrator by the probate court of Lenawee county, Mich., George N. Jones knew, and Lucy R. Jones knew, that the said Arthur P. Crane had his domicile in and was a resident of the State of Ohio when he died, and that the

probate court of Lucas county, in that State, had so determined, and that the insertion of the statement in the application of the said Lucy R. Jones that Arthur P. Crane was a resident of Lenawee county, Mich., when he died, was due to "accident, mistake, or fraud," and that the determination of the probate court of Lenawee county, Mich., that said Crane was a resident of said Lenawee county when he died was due to such "accident, mistake, or fraud"; that said George N. Jones, shortly after his appointment as such administrator, told two of the plaintiffs that after the debts and expenses of said deceased in Michigan were paid he would turn over to them the balance of the personal property of the said deceased at any time they desired, but that said moneys might as well remain in the banks at Adrian, Mich., and draw interest there, as to be placed in the banks in Toledo, Ohio; that plaintiffs rested on the assurance so given them by said George N. Jones, and had no knowledge that any claim was being made that said Crane was a resident of Michigan at the time of his death, until the Michigan administrator was requested in 1913 to turn over said moneys to the Ohio administrator, a request which the said George N. Jones refused, and still refuses. Charles H. Colvin, one of the plaintiffs, and the other second cousins of said Arthur P. Crane, do not inherit any of the property of said Crane, either real or personal, distributable under the laws of the State of Michigan, and do inherit under the laws of Ohio, and the first cousins of the half blood inherit equally with the first cousins of the whole blood of the nonancestral property of the said deceased under the laws of Michigan, but do not inherit any of the property of said deceased, ancestral or nonancestral, under the laws of Ohio. It is further charged that the Michigan administration is an ancillary administration in fact; that it was not necessary for the Lena-

wee county probate court to determine that said Arthur P. Crane was a resident of Michigan when he died in order to obtain jurisdiction to grant letters of administration of his estate in Michigan; that no appeal now lies from the order of said probate court of Lenawee county making such determination, and that no relief can be obtained except in a court of equity; that the probate court of Lenawee county, Mich., cannot change its former order determining that the said Arthur P. Crane was a resident of Michigan at the time of his decease. It is prayed that the court determine and decree that the order made by the probate court of Lenawee county, Mich., in so far as it determined that Arthur P. Crane was a resident of Michigan when he died, be set aside; that the said George N. Jones, the Michigan administrator, be directed to turn over to the Ohio administrator the moneys in his hands to be disposed of by the Ohio court; that in any event an order be made that the said fund be distributed by the Michigan administrator in accordance with the laws of Ohio to the persons and in the proportions in which they would severally be entitled under the laws of that State.

The plaintiffs are the administrators appointed by the Ohio court and one of the second cousins of the deceased, and the bill makes all other of the first cousins of deceased and the second cousins of the whole blood on the father's side parties defendant. To the bill certain of the defendants demurred; the grounds of demurrer being that it appears on the face of the bill that a court of equity has no jurisdiction, that all the matters and things alleged in the bill could be tried and determined in a proceeding at law, and because a proceeding at law is now pending wherein a court of law has assumed and now holds jurisdiction of the subject-matter of the suit. These grounds of demurrer are somewhat amplified in demurrers filed

by other defendants. Upon hearing upon the bill and demurrers, the demurrers were sustained, with leave to amend the bill of complaint, and from this decree the plaintiffs appeal.

Plaintiffs (appellants) claim:

"(1) That Arthur P. Crane had his domicile in and was a resident of Ohio at the time of his death.

"(2) That the Ohio court first passed upon the question as to the domicile of deceased, and determined that it was in the State of Ohio at the time of his death.

"(3) That the determination of the Ohio court is controlling throughout all subsequent proceedings, no appeal having been taken from that determination.

"(4) That the later determination of the Michigan court, that deceased had his domicile in and was a resident of Michigan at the time of his death, is null and void under the full faith and credit clause of the Federal Constitution.

"(5) That the Ohio administration is in fact the principal administration, and that the Michigan administration is, in fact, an ancillary administration.

"(6) That it was not necessary for the Michigan court, in order to acquire jurisdiction to appoint an administrator in this State, to determine that deceased was a resident of this State at the time of his death. It had jurisdiction, without so finding, to appoint a Michigan administrator to take charge of the property and effects of deceased in this State.

"(7) That a court of equity has jurisdiction to relieve from the consequence of fraud or mistake in a case of this kind.

"(8) That one cannot be held guilty of laches in failing to anticipate fraud, and that plaintiffs are not guilty of laches in failing to take an appeal from the order of the Michigan court.

"(9) That that portion of the order of the Michigan court determining that deceased had his domicile in and was a resident of Michigan at the time of his death should be set aside, and the money in the hands of the Michigan administrator, after paying the debts of deceased and expenses of administration in this State, should be ordered turned over to the Ohio ad-

ministrators for distribution under the laws of Ohio, or, at least, that it should be ordered distributed under the laws of that State."

They do not claim—they disclaim—that the question of domicile can be examined into and determined in this proceeding, and do claim that the question was, as to all parties in interest, conclusively determined in the Ohio court. For demurrants it is claimed that the meritorious question presented is whether the judgment of the probate court of Lenawee county, regular on its face, shall be set aside by a court of equity.

OSTRANDER, J. (*after stating the facts*). It is the rule that where the owner of property dies, intestate, his real estate devolves according to the law of the State in which it is situated, his personal property is distributed according to the law of his domicile. It is necessary, and is convenient, that, before the estate of a deceased persons falls into pieces, debts payable therefrom shall be ascertained and paid, taxes exacted by the State shall be computed and paid. The State, by virtue of its sovereign authority, temporarily takes into charge the *res* constituting the estate, for the purposes just mentioned, and, if the State of the domicile of the deceased person, for the further purpose of assigning the residue of the personal estate to the persons found to be entitled thereto.

The sovereignty of a State and the jurisdiction of its courts do not extend to and embrace property not within the territorial jurisdiction of the State, and, while each State possesses sovereign power over persons and property within its territory, it is an elementary principle that the laws of one State have no operation outside of its territory, except so far as is allowed by comity, and no tribunal established in a State can extend its powers beyond the territory of

the State, so as to subject either persons or property to its decisions. It is therefore undeniable that the tribunal of the State of Ohio could exercise no control over the property of the deceased person which was situated in Michigan, except in so far as it was admitted by State comity to do so.

Admitting that the Ohio court possessed the power to determine the question of domicile of the decedent for the purpose of conclusively adjudicating the validity, within that State, of the grant of letters of administration, it did not possess the power to conclusively bind all the world as to the fact of domicile by a mere finding of such a fact in a proceeding *in rem.* *Overby* v. *Gordon,* 177 U. S. 214 (20 Sup. Ct. 603) ; *Tilt* v. *Kelsey,* 207 U. S. 43 (28 Sup. Ct. 1) ; *Brigham* v. *Fayerweather,* 140 Mass. 411 (5 N. E. 265). The Michigan court had an equal right to determine the question of domicile for the same purpose. We must therefore deny the contention of plaintiffs that the decision of the Ohio court conclusively establishes that the domicile of the decedent was in the State of Ohio.

In *Reynolds* v. *McMullen,* 55 Mich. 568, 573 (22 N. W. 41, 44 [54 Am. Rep. 386]), this court, speaking by Mr. Justice COOLEY, said:

"We concede to the fullest extent the general principle, relied upon by defendants, that personal property, in contemplation of law, accompanies the person of the owner, and that its disposition on his death is to be determined by the laws of his domicile. But, while the rule of distribution is thus determined, the steps to reach it may be otherwise prescribed; and when the property is in one jurisdiction, and the domicile in another, the necessity for distinct proceedings in administration may be imperative. The proceedings, when taken in this class of cases, are governed and regulated by certain rules of interstate comity, which are thus stated by the court of appeals of New York:

" 'It is an established doctrine, not only of international law, but of the municipal law of this country, that personal property has

no locality. It is subject to the law which governs the person of the owner, as well in respect to the disposition of it by act *inter vivos* as to its transmission by last will and testament, and by succession upon the owner dying intestate. The principle, no doubt, has its foundation in international comity; but it is equally obligatory, as a rule of decision in the courts, as a legal rule of purely domestic origin. It does not belong to the judges to recognize or to deny the rights which individuals may claim under it, at their pleasure or caprice; but, it having obtained the force of law by user and acquiescence, it belongs only to the political government of the State to change it whenever a change becomes desirable. But the right which an individual may claim to personal property in one country, under title from a person domiciled in another, can only be asserted by the legal instrumentalities which the institutions of the country where the claim is made have provided. The foreign law furnishes the rule of decision as to the validity of the title to the thing claimed; but in respect to the legal assertion of that title it has no extra-territorial force. As a result of this doctrine it is now generally held everywhere, and it is well settled in this State, that an executor or administrator appointed in another State has not, as such, any authority beyond the sovereignty by virtue of whose laws he was appointed.' Denio, J., in *Parsons* v. *Lyman*, 20 N. Y. 103, 112, citing *Morrell* v. *Dickey*, 1 Johns. Ch. [N. Y.] 153; *Vroom* v. *Van Horne*, 10 Paige [N. Y.] 549 [42 Am. Dec. 94]."

See, also, *Dickinson* v. *Seaver*, 44 Mich. 624, 629 (7 N. W. 182).

In various ways our statutes recognize the rights of a foreign domiciliary executor or administrator. 3 Comp. Laws, §§ 9110-9113, 9124, 9323, 9443 (3 Comp. Laws 1915, §§ 13819, 13915, 14020-14022, 14465). There has been no application in the matter of this estate, and as respects the property of the decedent situated in this State, for administration ancillary to the administration proceeding in the Ohio court. There has been no application to the probate court by the foreign administrator for an order directing the local administrator to turn over the fund in his hands. It must be admitted that in either jurisdiction the personal estate should be distributed to the per-

sons who are by law entitled to it, and that title to the personal estate is determined by the law of the domicile of the intestate. In my opinion these considerations do not warrant a court of equity in interposing in the probate proceedings here, especially when it is denied by the plaintiffs that the equity court may determine, for itself, where the intestate was domiciled, and inasmuch as the estate in Ohio cannot be, by its order, brought into Michigan for final distribution, if the facts require it. So far as the record discloses facts, the Michigan court has proceeded regularly to administer an estate found within the jurisdiction of the court to the point of distribution thereof. The bill asks that a court of equity act upon that court, its orders, and its officer, in respect to matters over which the probate court appears to have jurisdiction.

The order appealed from is affirmed (without prejudice to the rights of any one interested, advised thereto, to take other or further proceedings), with costs to appellees; one. solicitor's fee only to be taxed as costs.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.