OKLAHOMA, K. & M. I. RY. CO. v. BOWLING.

(Circuit Court of Appeals, Eighth Circuit.   March 9, 1918.)

No. 5026.

1. STATES ⟨⟩9—TERRITORIES ⟨⟩11—AUTHORITY OF CONGRESS—EFFECT OF ADMISSION.

Before territories are admitted to statehood, Congress exercises as to them the combined powers of the national and state governments; but, when a territory is admitted to the Union as a state, it stands on the same footing as the original 13 states, with supreme authority as to all matters of internal government and local concern, subject only to the limitations of the federal Constitution, and statutes enacted for the territory upon subjects of state cognizance are automatically abrogated.

2. STATES ⟨⟩9—STATUTES—INDIAN TERRITORY.

Act Feb. 28, 1902, c. 134, 32 Stat. 43, authorizes any railroad company to take and condemn a right of way in or through any lands held by any Indian tribe or nation, person, individual, or municipality in the Indian Territory, or in and through any lands whch have been or may hereafter be allotted in severalty, whether the same have or have not been conveyed with full power of alienation. Oklahoma was in 1907 admitted as a state. Act May 27, 1908, c. 199, 35 Stat. 312, relating to the removal of restrictions on the lands of Indian allottees, declares in section 1 that "no restriction of alienation shall be construed to prevent the exercise of the right of eminent domain in condemning rights of way for public purposes over allotted lands, and for such purposes" the sections of the 1902 act on that subject "are hereby continued in force in the state of Oklahoma." Held, that the admission of Oklahoma as a state abrogated the act of 1902 as to lands in the Indian Territory, which had been conveyed by the Indian allottees after the restrictions on alienation had expired, and by the 1908 act the procedure prescribed by the 1902 act for the exercise of the right of eminent domain was preserved only so far as it affected Indian lands, including those allotted, but still subject to restrictions against alienation.

3. EMINENT DOMAIN ⟨⟩20(1)—INTERSTATE COMMERCE.

Act Feb. 28, 1902, and Act May 27, 1908, relating to Indian lands, are not a grant of authority to railroads, engaged, or organized to engage, in interstate commerce, to appropriate private property in the state of Oklahoma, but are limited to Indian lands.

4. APPEAL AND ERROR ⟨⟩70(5)—ORDERS APPEALABLE.

An order denying a motion to dismiss plaintiff's petition, not followed by decree disposing of the case, is not appealable.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit by George E. Bowling against the Oklahoma, Kansas & Missouri Interurban Railway Company. From an order of temporary injunction, defendant appeals. Affirmed.

Edward R. Jones, of Muskogee, Okl., and Ephraim H. Foster, of Oklahoma City, Okl., for appellant.

H. H. McCluer and Roland Hughes, both of Kansas City, Mo. (Vern E. Thompson, of Miami, Okl., on the brief), for appellee.

Before HOOK, CARLAND, and STONE, Circuit Judges.

HOOK, Circuit Judge.   This is an appeal by the railway company from an order of temporary injunction at the suit of George E. Bowl-

ing. It involves the validity of condemnation proceedings to take lands for railroad purposes under Act Feb. 28, 1902, c. 134, 32 Stat. 43, commonly called the Enid & Anadarko Act. The lands are in that part of the state of Oklahoma that was formerly Indian Territory. The proceedings were begun by the company after the admission of the state, in the United States District Court for the Eastern Judicial District, as successor to the jurisdiction of the United States Courts in the Indian Territory. The precise question is whether the act of 1902, aided by a later act to which reference will be made, continued to apply to lands like those of the plaintiff after the territory became a part of the state.

The lands had been tribal property of the confederated Wea, Peoria, and other tribes of Indians, had been allotted in severalty, and after the expiration of all restrictions upon alienation had been conveyed to and become the property of the plaintiff, a citizen of Missouri. The Indian title and interest had wholly ceased. The act of 1902 authorized any railroad company to take and condemn a right of way, etc., "in or through any lands held by any Indian tribe or nation, person, individual, or municipality in said territory, or in or through any lands in said territory which have been or may hereafter be allotted in severalty to any individual Indian or other person under any law or treaty, whether the same have or have not been conveyed to the allottee, with full power of alienation." Section 13. After Oklahoma was admitted as a state, in 1907, Congress adopted Act May 27, 1908, c. 199, 35 Stat. 312, relating to removal of restrictions from part of the lands of Indian allottees. The railway company points to the following provision of that act:

"No restriction of alienation shall be construed to prevent the exercise of the right of eminent domain in condemning rights of way for public purposes over allotted lands, and for such purposes" the sections of the act of 1902 on that subject "are hereby continued in force in the state of Oklahoma." Section 1.

Upon this it is argued that all lands in what was formerly the Indian Territory were either allotted or unallotted, that the lands of plaintiff fell in the former class, and that Congress not only had the power, but manifested its intention, to continue the condemnation provisions of the act of 1902 as to them, notwithstanding the fact that the Constitution and laws of the state of Oklahoma contained full provisions regarding the condemnation of lands for railroad purposes and subjected such proceedings to the jurisdiction of the state courts.

[1] The authority of Congress over the territories of the United States is a familiar feature of our history. Before they are admitted to statehood it exercises as to them the combined powers of the national and state governments by direct legislation, and also through local legislative bodies whose acts are subject to its supervision, or, as was the case with the Indian Territory, by extending thereto certain of the laws of an organized state. But when a territory is admitted into the Union as a state it stands in every respect upon the same footing as the original 13 states, with supreme authority as to all matters of

249 F.—38

internal government and local concern subject only to the limitations of the federal Constitution. Coyle v. Oklahoma, 221 U. S. 559, 31 Sup. Ct. 688, 55 L. Ed. 853. Upon attaining statehood the statutes enacted for the territory upon subjects of state, as distinguished from federal, cognizance are automatically abrogated, except so far as they may be affirmatively continued to prevent an interregnum or hiatus. Benner v. Porter, 9 How. 235, 13 L. Ed. 119; Escanaba Co. v. Chicago, 107 U. S. 678, 688, 2 Sup. Ct. 185, 27 L. Ed. 442. An instance of legislation for a territory that took on a double aspect is presented by Act March 1, 1895, c. 145, 28 Stat. 693, prohibiting the carrying of intoxicating liquor into the Indian Territory. The subsequent Oklahoma Enabling Act and the admission of the state operated by implication to repeal it as to such commerce wholly within the boundaries of the new state, but left it in force as to the commerce that was interstate. The authority for the survival of the latter phase of the statute rested in the power of Congress over commerce among the states and with the Indian tribes and in the peculiar relation and continuing responsibilities of the federal government towards the Indians and their lands. Ex parte Webb, 225 U. S. 663, 32 Sup. Ct. 769, 56 L. Ed. 1248; United States v. Wright, 229 U. S. 226, 33 Sup. Ct. 630, 57 L. Ed. 1160. But, as already observed, as to those things that were within the power of the sovereign state the statute fell.

[2] The act of 1902 prescribed a procedure for the exercise of the right of eminent domain and by its terms applied to all lands in the Indian Territory, regardless of Indian title. This was naturally so, because there was then no other competent legislative authority than Congress. But the comprehensive scope of the legislation did not survive the admission of the state. By the act of 1908 Congress merely sought to preserve it so far as it affected Indian lands including those that had been allotted but were still subject to restrictions against alienation. That was the extent of its interest during statehood. The power of Congress to legislate ends when the transitory character of the subject-matter ceases to be of federal concern.

[3] It is also urged by the railway company that the application of the statute to the plaintiff's lands should be sustained as a regulation of interstate commerce. Assuming, without consideration, that Congress might under the power indicated authorize railroads engaged or organized to engage in such commerce to appropriate private property within the states, prescribe a procedure therefor, and confer jurisdiction of the proceedings upon the courts of the United States, it would take a plainer case than the one here to indicate its intention to do so. The obvious, apparent reason for the continuance of the legislation in question during statehood is in the peculiar character of the tenure of a particular class of lands, and when that ceases the laws of the state attach and are exclusive.

[4] An appeal has also been taken from an order denying a motion to dismiss the plaintiff's petition. The order was not followed by a decree disposing of the case, and is not appealable.

The order of injunction is affirmed.