*In re* CRANE'S ESTATE.

1. DOMICILE—QUESTION FOR COURT.

Where the owner of personal property in Ohio and Michigan died intestate in Ohio, the question of his domicile was properly one for the Michigan courts to decide, in proceedings in this State to administer his estate, notwithstanding the courts of Ohio had determined that he was domiciled in Ohio.

2. SAME—QUESTION OF FACT—INTENTION.

That there was no conflicting testimony does not make the issue of domicile one of law merely, where consideration of all of the testimony still left the matter one of the intention of the deceased; the probative value of his actions, declarations and interests being for the court.

205—Mich.—43.

3. APPEAL AND ERROR—CIRCUIT COURT RULE—REQUESTED FINDINGS —WEIGHT OF EVIDENCE—REVIEW.

Where, in a case tried by the court without a jury, in view of the fact that Circuit Court Rule No. 45 was not complied with, there being no request for findings of fact and law, it is doubtful if the record presents any question for determination in the Supreme Court, and, upon review, it cannot be said that the findings of fact are against the clear weight of the evidence, the conclusion of the court below will be affirmed.

Error to Lenawee; Chester, J., presiding. Submitted January 23, 1919. (Docket No. 126.) Decided May 29, 1919.

George N. Jones presented his final account as administrator of the estate of Arthur P. Crane, deceased, and asked for an order of distribution. The account was allowed and an order of distribution entered in the probate court, and Charles H. Colvin and others appealed to the circuit court. Judgment sustaining the order of the probate court. Contestants bring error. Affirmed.

*Herbert R. Clark, Elmer E. Davis,* and *Henry I. Bourns,* for appellants.

*Baldwin, Alexander & Russell,* for appellee administrator.

*Bert D. Chandler,* for appellees Knapp and Duryea.

OSTRANDER, J. Arthur P. Crane, a bachelor, died April 28, 1911, at Toledo, Ohio, intestate, his relatives being first and second cousins of the whole and half blood. He left real and personal estate in Lenawee county, Michigan, and personal estate in Lucas county, Ohio. Proceedings to administer his estate were begun both in Ohio and in Michigan, in which latter State they have proceeded to a point where the administrator, after paying all proven debts and the expenses of administration, has on hand, in cash,

nearly $10,000, and in his final account he asks that this be ordered distributed and he discharged. The probate court for Lenawee made an order May 16, 1917, distributing the money to the first cousins of the deceased, 16 in number, denying the joint petition of Charles H. Colvin, a second cousin of deceased, of the whole blood, living in Lenawee county, and the Ohio administrators, and refusing them leave to offer testimony to prove that the deceased died domiciled in Lucas county, Ohio; denying, also, an order that the personal estate be turned over to the Ohio administrators for distribution and that the estate be distributed in accordance with the laws of Ohio. From the order entered, these petitioners claimed and were allowed an appeal to the circuit court for Lenawee county. In that court testimony was introduced which tended to prove that the deceased had been for 25 years before, and was at the time of, his death domiciled in said Lucas county, Ohio. There was testimony introduced which, while not contradicting the circumstances relied upon to prove an Ohio domicile, tended to prove that after the death of his surviving parent (in 1901), who lived in Adrian, Lenawee county, Michigan, by whose death the deceased came into possession and ownership of the Adrian home, a store building, several lots in Adrian, and two farms in said Lenawee county, he elected to treat, and did treat and regard, Adrian as his home, although continuing to practice law in Toledo. The issue was tried in the circuit court without a jury. It does not appear that either party asked for findings of fact and law. The cause was brought on to be heard December 20, 1917, and at some time, the date not appearing in the printed record, the court filed an opinion and on April 1, 1918, entered an order in conformity therewith. The opinion is as follows:

"Arthur P. Crane died in Toledo, Ohio, April 28, 1911. His parents lived, for many years, on a farm

in Lenawee county, and the latter part of their lives they lived in Adrian in Lenawee county. In his childhood life and younger years, Arthur lived with his parents on the farm and in Adrian. Arthur was an only child, and succeeded to all the estate of his parents. From the death of his parents, Arthur has kept a large part of the farm and real estate in Adrian that he inherited. Arthur never married, studied law and eventually went to Toledo to practice his profession. From the death of the survivor of his parents, he owned and maintained the old home of his parents in Adrian as his home. The only home he owned and kept up in any place was the old homestead at Adrian. This he did at considerable expense. He called it home, referred to it as his home, returned to it, for long or short periods of time, several times during each year.

"In Toledo he roomed and boarded and maintained a business office in the practice of his profession; and for the purpose of pursuing his professional business in Toledo, he exercised the privilege there of voting, serving on election boards and holding a notarial commission.

"During this time it was his fixed intention to return to Adrian to live in the home of his parents and give his whole time to looking after his farms and other real estate and personal property in Lenawee county, this home that he had maintained and kept up for years as his real home.

"Does the fact of voting in a particular place establish a residence in that place?

"Our own court, in the case of *Beecher* v. *Common Council of Detroit*, 114 Mich. 228, affirmed a decision establishing a residence in a county other than where the party voted. This decision, in effect, is that the fact of voting in a county does not, in itself, as a matter of law, fix the residence in the county where he voted. This being true, under the holding of our court, I am unable to see how the circumstance of serving on an election board or holding a notarial commission would, as a matter of law, establish a residence. The testimony shows that Arthur P. Crane, for the latter part of his life, considered and treated Adrian as his home, his domicile, and the Lenawee county probate court so found.

"The question of Mr. Crane's residence, under the petition for administration of his estate in Lenawee county, was one to be determined by the probate court of Lenawee county. That court determined that question, and no appeal was taken.

"Under the facts and circumstances of this case and the finding of the probate court, I do not feel that this court should disturb the order of the probate court of Lenawee county.

"The appeal may be dismissed and the proceedings certified back to the probate court of this county for further proceedings."

The printed record shows a paper, dated April 18, 1918, in and by which appellants except—

"to the findings of fact and findings of law made by the court, such findings being against the clear weight of the evidence, contrary to the evidence and contrary to the law."

Thereafter, assignments of error were filed, a bill of exceptions settled, and a writ of error sued out.

Appellants had earlier invoked the aid of a court of equity, had filed a bill in the circuit court for the county of Lenawee, in chancery, seeking a decree sustaining the contentions they now make, save only the one that the facts show a domicile in Ohio. They disclaimed that the question of domicile could be inquired into and determined by the court. There was a demurrer, sustained in the court below and in this court. *Colvin* v. *Jones*, 194 Mich. 670. In the opinion given in *Colvin* v. *Jones*, it was said, among other things:

"We must therefore deny the contention of plaintiffs that the decision of the Ohio court conclusively establishes that the domicile of the decedent was in the State of Ohio,"

And further it was said:

"It must be admitted that in either jurisdiction the personal estate should be distributed to the persons who are by law entitled to it, and that title to the

personal estate is determined by the law of the domicile of the intestate."

The order appealed from was affirmed "without prejudice to the rights of any one interested, advised thereto, to take other or further proceedings."

As has been related, the plaintiffs in the equity proceeding, after the decision in *Colvin* v. *Jones* was handed down, petitioned the probate court for Lenawee county either to order the personal estate of deceased in the hands of the Michigan administrator to be turned over to the Ohio administrators or to order a distribution thereof to be made by the Michigan administrator in accordance with the law of Ohio. They, for the first time, tendered in a Michigan court the issue whether Mr. Crane was in fact domiciled in Michigan or elsewhere when he died. The probate court refused to determine this issue, holding that it had been determined before the Michigan administrator was appointed: the circuit court, on appeal, determined the issue, as one of fact, adversely to the appellants.

The reason for this litigation is found in the fact that by the Ohio law a class of persons are proper distributees who are not recognized as such by the Michigan law, and if the Ohio law is controlling the shares of the persons to whom the estate has been assigned will be smaller. The value of the personal property of the deceased in Ohio is not disclosed. It may be assumed that if the great bulk of decedent's personal estate was in the possession of the Ohio administrators there would be no objection on the part of the first cousins to turning over the Michigan estate to the Ohio authority.

The questions presented in argument are interesting, and some of them novel in this jurisdiction. Some of them are considered, *arguendo*, in *Baker* v. *Baker, Eccles & Co.*, 242 U. S. 394 (37 Sup. Ct. Rep. 152),

a case presenting, primarily, the question whether full faith and credit had been given by the courts of Kentucky to certain judicial proceedings of the State of Tennessee. In the opinion of the court it is observed:

"In many forms, and with much emphasis, the plaintiff in error presses the argument *ab inconvenienti*. Starting from the proposition that the entire personalty of an intestate decedent wherever in fact located is a unit, having its legal *situs* at the owner's domicile, and that its distribution ought to be in accordance with the law of that domicile, it is argued: How is it possible to judicially determine that domicile under the theory of the Kentucky court of appeals in the case of an intestate entitled to personalty in several States having different laws of distribution, and with parties claiming to be distributees residing in different jurisdictions? Assuming a lawful grant of administration in each State wherein part of the personalty is located and some of the possible distributees reside, how, it is asked, is any one of these administrators, or any one of the claimants of a share in the whole estate, to have the place of the intestate's domicile settled authoritatively and the lawful distributees ascertained? The answer is clear. Unless all possible distributees can be brought within the jurisdiction of a single court having authority to pass upon the subject-matter, either by service of process or by their voluntary appearance, it must in many cases be impossible to have a single controlling decision upon the question. In some cases, the ideal distribution of the entire personal estate as a unit may thus be interfered with; but whatever inconvenience may result is a necessary incident of the operation of the fundamental rule that a court of justice may not determine the personal rights of parties without giving them an opportunity to be heard."

In a general way, the observation is pertinent here, and answers some arguments which are made to us.

It has resulted, however, that, interesting and important as some of the questions mooted are, the case does not, in our opinion, call for their consideration or determination. It is plain that neither in form nor

in fact is the administration proceeding in Michigan ancillary to the one carried on in Ohio. Assuming, what appellants contend, that the personal estate of Mr. Crane should be distributed according to the law of his domicile and that the court should determine his domicile; that if he was domiciled in Ohio the probate court ought to order a distribution to those who are by the Ohio law entitled to the residue, it has been determined that the deceased was domiciled in Michigan. That the Michigan courts have the right to determine the question is too clear for argument. That there is no conflicting testimony does not make the issue one of law merely. Consideration of all of the testimony still left the matter one of the intention of the deceased. All of his actions, his declarations, his interests, affecting the question, were for consideration, the probative value of them was for the court. If no error prejudicial to appellants was committed, the matter is settled. Whether prejudicial error may be found depends, first, upon whether any question of error is presented by the record.

It is doubtful if the record presents any question for our determination. Plainly, the simple practice marked out by Circuit Court Rule No. 45, in cases tried by the court without a jury, has not been pursued. If any question is presented, it is this, namely, Are the findings of fact against the clear weight of the evidence? Chapter 18, §§ 14 and 15, judicature act (3 Comp. Laws 1915, §§ 12586, 12587). Upon reviewing the testimony, we are not prepared to hold that it does not fairly sustain the conclusion of the trial court. See, generally, *Beecher* v. *Common Council of Detroit*, 114 Mich. 228.

We therefore affirm the order made below, with costs to the estate.

BIRD, C. J., and MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred. FELLOWS, J., did not sit.