**GILLESPIE v. SCHRAM.**
No. 7974.

Circuit Court of Appeals, Sixth Circuit.
Dec. 7, 1939.

40

Leon R. Jones, of Detroit, Mich. (H. L. Lyster and Wiley, Streeter & Ford, all of Detroit, Mich., on the brief), for appellant.

Roy G. Holmes, of Detroit, Mich. (Robert S. Marx, Carl Runge, and Roy G. Holmes, all of Detroit, Mich., on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

Appellant appeals from orders of the lower court granting an interlocutory injunction and overruling her motion to dismiss appellee's bill of complaint.

The First National Bank-Detroit, a National Banking Association of Detroit, Michigan, ceased business February 11, 1933, and on March 13, 1933, was, by the Comptroller of the Currency, placed in the hands of a Conservator who on May 11, 1933, was succeeded by B. C. Schram, receiver, also appointed by the Comptroller, in which position he has since continued.

On May 16, 1933, the Comptroller of the Currency, pursuant to the provisions of R.S. § 5151, 12 U.S.C.A. § 63, levied a one hundred percent assessment against the stockholders of the defunct bank. Its stock was owned by the Detroit Bankers Company, a Michigan corporation, a holding company, the charter of which provided that the holder of each share of its common stock should be individually and severally liable for its ratable and proportionate part based on their respective stockholdings of the total issued, and outstanding stock of the corporation because of its ownership of shares of the capital stock of other corporations and, by the acceptance of the certificates, they severally agreed that such liability could be enforced against each of them in the manner and to the extent that such statutory liability is usually enforced against banks or trust companies under the laws under which organized and operating.

Appellant's intestate, Harry B. Gillespie, died February 15, 1935, at which date and prior thereto, he was the registered owner of 187 shares of the Detroit Bankers Company stock, which corporation had no substantial assets except the stock of its units and, pursuant to its charter provisions, appellee demanded of Gillespie that he pay as his proportionate part of the assessment against the stockholders of the First National Bank-Detroit, $14.055775 per share representing his ownership, through the Detroit Bankers Company, of .14055775 shares of the First National Bank-Detroit stock.

In April, 1934, it was decreed by the United States District Court for the Eastern District of Michigan, Southern Division, in the case of Barbour et al. v. Thomas, Receiver, et al., 7 F.Supp. 271, that the stockholders of the Detroit Bankers Company were liable in proportion to their stock ownership to the receiver of the First National Bank-Detroit for the Comptroller's assessment on its capital stock. This decision was affirmed by this court in 6 Cir., 86 F.2d 510, and a review by certiorari was denied by the Supreme Court March 8, 1937, 300 U.S. 670, 57 S.Ct. 513, 81 L.Ed. 877. Gillespie was not personally a party to this action, although it was a representative suit.

Appellant, Emily (Emelie) N. Gillespie, was duly appointed by the Probate Court of Wayne County, Michigan, and qualified as Administratrix of the estate of Harry B. Gillespie. Pursuant to the provisions of Compiled Laws of Michigan, Section 15681, the Probate Court appointed Harry L. Walker, Commissioner, to receive and decide claims against the estate. On June 26, 1935, appellee, receiver, filed with the Commissioner his claim for the aforementioned assessment, and on December 16, 1936, it not having been passed upon, appellee withdrew it and thereafter the Commissioner filed his report with the court without reference thereto.

On November 20, 1936, appellee instituted this action in which substantially the foregoing facts were stated and that he was apprehensive that before the case could be heard, the appellant-administratrix would distribute the assets of the estate and place them beyond his reach for paying the assessment liability, close her administration and procure her discharge, unless enjoined and restrained from so doing. He prayed that the court order an accounting to determine the proportionate part of the assessment against the stockholders of the First National Bank-Detroit chargeable to the estate of Gillespie on his 187 shares of Detroit Bankers Company stock and that he have judgment against the appellant accordingly.

He further prayed that appellant, her agents, attorneys and employees be enjoined and restrained, pending the action and for such further time as the court might determine, from taking any steps whatsoever to close the administration of said estate, and from distributing or in any manner disposing of its assets without first paying or making provision for the payment of said assessment liability, together with interest thereon from July 31, 1933.

On November 20, 1936, the court issued a show cause order returnable December 7, 1936, and a temporary restraining order as prayed. On January 29, 1938, appellant filed a motion to dismiss appellee's bill and to dissolve the temporary restraining order on the ground that the bill lacked equity and sought to enjoin and interfere with the administration of an estate at that time within the jurisdiction of the Probate Court. On January 31, 1938, this motion was denied and from this order an appeal was prosecuted to this court. Appellee made motion to dismiss the appeal, which was denied without prejudice and the cause remanded to the District Court for the sole purpose of determining the issues raised

by the show cause order. On May 21, 1938, the lower court issued its order of injunction as prayed and, from this order and the prior order refusing to dismiss, this appeal is prosecuted.

Appellee had an alleged unsecured and unpreferred claim against appellant and, while based on a Federal Statute, it could be enforced only in conformity with the laws of Michigan for the enforcement of debts of like nature. Pufahl v. Parks' Estate, 299 U.S. 217, 225, 57 S.Ct. 151, 81 L.Ed. 133.

The obligation of the estate to pay the assessment in question, if due, remained unimpaired until discharged or became unenforceable by reason of lapse of time and if, in the meantime, there was a distribution of its assets, the heirs, devisees or legatees would be liable for the indebtedness in proportion to the estate they may have respectively received. Schutz v. Read, 284 Mich. 548, 280 N.W. 45.

The Probate Court of Michigan is a constitutional court of the State (Article 7, Sections 1, 13) and one of record having general jurisdiction of matters relating to the settlement of estates of deceased persons (Section 15519, Michigan Compiled Laws) including the control of administrators. Its jurisdiction under the laws of the State is exclusive except in cases where its remedies are inadequate or where the exercise of equitable jurisdiction is necessary for some auxiliary purpose in aid of such jurisdiction otherwise acquired. Brooks v. Hargrave, 179 Mich. 136, 146 N.W. 325; Calvin v. Jones, 194 Mich. 670, 161 N.W. 847; Allen v. Allen, 209 Mich. 362, 176 N.W. 587.

Section 15659 of the Michigan Compiled Laws provides that "an administrator shall have a right to the possession of all real, as well as personal, estate of the deceased."

When the Probate Court of a state, in the exercise of its jurisdiction acquires control of the assets of an estate and is engaged in their administration, it is a well-settled rule of law that the Federal courts will not disturb such jurisdiction except for inadequacy of remedy in the Probate Court or for some necessary auxiliary purpose in aid of its own jurisdiction. Tussing v. Central Trust Company, 34 F.2d 312, D.C.; Essonay Film Company v. Kane, 258 U.S. 358, 362, 42 S.Ct. 318, 66 L.Ed. 658; Princess Lida v. Thompson, 305 U.S. 456, 467,

59 S.Ct. 275, 83 L.Ed. 285; Wells v. Helms, 10 Cir., 105 F.2d 402.

Appellant was an officer of the court and her possession of the estate was taken in obedience to its orders and is thus the possession of the court, which cannot be disturbed by any other court, except for some necessary auxiliary purpose in aid of its own jurisdiction. Byers v. McAuley, 149 U.S. 608, 615, 13 S.Ct. 906, 37 L.Ed. 867. However, a creditor of the estate may establish his claim in any court of competent jurisdiction and enforce such adjudication against the administrator personally, his sureties, or any other person liable therefor, or proceed in any way which does not disturb the actual possession of the property in the state court. Such proceeding is not in rem; it seeks to establish rights, and such adjudications do not deal with the property and order of distribution. Commonwealth Trust Company v. Bradford, 297 U.S. 613, 619, 56 S. Ct. 600, 80 L.Ed. 920.

Appellee's right to injunction must fail as an ancillary aid to his main relief because there is no fact alleged showing that he lacks an adequate and complete remedy at law or will suffer irreparable injury. It is necessary that something more be shown than an apprehension that a judgment at law, if obtained, will not prove availing on account of the distribution of assets in appellant's hands.

The appellee is not an execution creditor seeking the aid of equity by seizing credits and effects of his debtor not liable to execution and appropriating them in satisfaction of his judgment. Before equity may lend its aid to appellee, some ingredient of fraud, trust, impediment to the collection of his claim after judgment or a necessity for discovery must appear.

The appellee has no claim in chancery because of the quality of his debt and there is no showing as to the estate's assets and its indebtedness or the priority of claims or what sum, if any, the appellee would be entitled to out of the estate on distribution. Chancery cannot be appealed to until the creditor has faithfully exhausted all his remedies at law and will not take original cognizance of mere collection of debts but acts as an auxiliary to courts of law where their processes fail to supply the remedy because intercepted or defeated by some inequitable act of the par-

---

---

---

---

ties. Scott v. Neely, 140 U.S. 106, 117, 11 S.Ct. 712, 35 L.Ed. 358; Hollins v. Brierfield Coal & Iron Co., 150 U.S. 371, 381, 14 S.Ct. 127, 37 L.Ed. 1113; Adler et al. v. Fenton, et al., 65 U.S. 407, 411, 24 How. 407, 16 L.Ed. 696.

In order to aid appellee's plea for an injunction, this court will not indulge in the presumption that the appellant will misapply the proceeds of the trust in her hands while acting under the supervision of the Probate Court.

The appellee's right to injunction cannot be sustained because of the alleged necessity of an accounting. A court of chancery has jurisdiction in such matters and may grant an injunction as an incident thereto if it have some relation and is subsidiary to the main object; however, it is not proper in such proceedings to grant an injunction for an independent purpose. Equity may not take cognizance of every transaction between individuals in which an account is to be adjusted. It is only when there is great complexity in mutual accounts, difficulty at law or some discovery required, that a court of equity may exercise jurisdiction.

In the case at bar, none of these difficulties is present. The appellee sues on an implied statutory and also an express contract and the liability of each stockholder of the Detroit Bankers Company is individual and several. The action, therefore, as to each involves only his liability. A money judgment is sought and, while there is an allegation that appellee acts as a fiduciary and trustee for the creditors of the failed bank, the court has nothing to do with the administration of the estate and no facts are alleged which would serve as a basis for either an accounting or discovery. The findings of the necessity for the assessment were lodged exclusively in the Comptroller of the Currency in the absence of fraud, illegality or bad faith. No accounting between the appellant and appellee is involved. Broderick v. American General Corporation, 4 Cir., 71 F.2d 864, 94 A.L.R. 1359.

Under the Statutes (Sec. 128 of Judicial Code as amended, 28 U.S.C.A. § 225), the jurisdiction of the Circuit Courts of Appeals of the United States to review decisions of the District Courts is confined to their final decrees, except where the Congress has otherwise provided.

Under Section 129 of the Judicial Code, 28 U.S.C.A. § 227, the Circuit Courts have jurisdiction to review interlocutory orders or decrees of District Courts granting or refusing injunctions. However, this exception does not confer jurisdiction to review an order denying a motion to dismiss a bill for an injunction which is ancillary. Such an order, when not followed by a decree disposing of the case, does not terminate the litigation. The defendant in such an action has the right to go forward with affirmative defenses and it does not meet the test of a final decision which is one that puts an end to the suit deciding all the points in litigation, leaving nothing to judicial determination but to enforce, by execution or other process, its judgments or decrees. Miller v. Pyrites Company, 4 Cir., 71 F.2d 804; Reed v. Lehman, Governor, 2 Cir., 91 F.2d 919; Dooley v. Fritz, 1 Cir., 45 F.2d 317; Oklahoma, K. & M. I. Ry. Co. v. Bowling, 8 Cir., 249 F. 592.

The injunction was improvidently granted and is dissolved. Insofar as the appeal is from the order denying appellant's motion to dismiss, it must be and is hereby dismissed.