**DERN et al. v. TANNER et al.**

No. 1196.

District Court, D. Montana.

Aug. 17, 1932.

John A. Shelton, of Butte, Mont., for plaintiffs.

Earle N. Genzberger, of Butte, Mont., for defendant H. J. Mueller.

Duncan & Duncan, of Virginia City, Mont., and R. F. Gaines, of Butte, Mont., for other defendants.

BOURQUIN, District Judge.

This more or less statutory suit was brought to adjudicate priorities in use of

the waters of Boulder creek and Coal canyon, separate streams, to quiet title and enjoin trespass.

■ Part of the evidence is depositions not conforming to and without the time of equity rule 47 (28 USCA § 723). Objections to them are overruled. Parties have statutory right without leave to take depositions of certain witnesses at any time before trial (28 USCA § 639), and the power of the Supreme Court to prescribe rules is by statute limited to those "not inconsistent with any law of the United States." 28 USCA § 730. Excluding the depositions by the statute contemplated, an extensive field for operation of the rule remains; and to sustain the rule it can and must be limited to the latter, analogous to statutes in like circumstances.

■■ Some of defendants contend of them is no jurisdiction, for that they claim a separate right and to Coal waters alone, the value of all of which does not exceed $3,000; and that they are joined merely to serve plaintiffs' convenience. To this are cited, amongst others, McDaniel's Case, 212 U. S. 429, 29 S. Ct. 343, 53 L. Ed. 584; Eaton's Case (C. C. A.) 141 F. 64, 5 Ann. Cas. 487; and Morris' Case (C. C.) 146 F. 423. A sufficient answer is that the evidence is clear the value of the uses of Boulder waters to the extent herein involved exceeds $3,000, and said waters by plaintiffs discharged into Coal and reclaimed below in practice have been largely used by said defendants in blend with the waters of the latter. Therefore they were properly joined herein, and like to any suit to quiet title, to partition, or to administer a trust fund, in suits like this at bar the jurisdictional "matter in controversy" is not any separate, unidentified, undivided claim, right, or part of any one owner or party to segregate and use some portion of the waters, but is all of them, the whole property, the aggregate of uses, the entire volume of waters.

And be that of jurisdictional value as it is here, it is immaterial that each claim, right, or part falls short of it. The evidence is that each party owns the lands in his pleadings described, and all the waters involved seldom would more than suffice for necessary irrigation of the acreage of any one of them. The prior rights in Boulder date from June 1, 1873, one of 120 inches owned by plaintiffs, and one of 60 inches owned by defendant Mueller, both measured where the Sperry ditch enters their lands.

■ As a rule, these rights enjoyed exhaust the supply, but in the some time excess the next in priority are rights dating from May 28, 1876, one of 120 inches owned by defendants Cornforth, and one of 60 inches owned by defendant Mueller, both measured where the Conforth-Little ditch enters their lands. And if at any time nature be in exceptionally kindly mood and graciously afford more waters, the next in priority in Boulder dates from April, 1903, of 200 inches owned by plaintiffs and measured where the Ada Derri and Pierce ditches enter their lands. In an earlier suit in a local court between plaintiffs and some of defendants, this right was decreed as of July, 1888. But plaintiffs' evidence in the instant suit discloses mistake therein, and to that extent on familiar principle nullifies said decree.

The only real controversy herein arises from rights asserted by defendants Tanner, Sidensticker, and Smith to priority in the use of the waters of Coal and of a mine tunnel and spring to it tributary. They deraign title from Stanich, who from 1916 made use of some indefinite amount of water from the tunnel, spring, and Coal. In 1922, 1923, Stanich ran a lower tunnel he testifies to capture the water from the other as it filtered down through the dump, and he recorded notices of appropriation of said waters as of those years. Later, he conveyed them and his lands to said defendants. In July, 1924, Heller located a mining claim which included said tunnel, and in 1931 he conveyed the water from the tunnel to said defendants.

■ By them it is claimed as developed water, and by plaintiffs as seepage from Coal and the Boulder waters by them discharged in Coal above the tunnel. Whether developed or seepage is immaterial, for, if not acquired by Stanich by prescription, they and the spring likewise tributary to Coal blended with the waters of Boulder, into Coal by plaintiffs since 1873 discharged above and all reclaimed below, and by them without further intent or act were thus appropriated. That the waters of Coal are of volume too scanty of themselves to be available to plaintiffs and Mueller does not defeat their appropriation. Separate waters thus unavailable may be legally appropriated if united and serviceable.

■ If the tunnel developed said waters, the miner who ran it abandoned them as the usual nuisance; and, becoming tributary to Coal, in settled law they inured to the ben-

efit of appropriations from that stream in order of priority. Tributary waters, branches, are inseparable parts of the main stream, and with it are subject to common appropriation and control in so far as reasonably necessary in irrigation as in navigation. The first may not be diverted to the impairment of prior rights in the last. The proprietor of the trunk owns the branches, and safety of the first requires protection of the last. By subsequent location of the ground, Heller acquired no right to this water, and could convey none to defendants. Prescription is not pleaded by defendants, successors to Stanich, and the only evidence to his adverse user of said waters is his conflicting evidence, in quantity and quality insufficient on which to base a decree divesting plaintiffs of their property in said waters by priority proven, and vesting title to them in defendants. The rights of the successors of Stanich in the waters of Coal are subsequent to plaintiffs' therein.

 In respect to waste of which complaint is made, the right in water is limited to reasonable necessity and use, and none for waste. Although the user is not bound to extraordinary diligence in means and methods of use, may proceed according to local custom, he is bound to reasonable care in construction and maintenance of appliances to the end that of the vital fluid others be not unnecessarily deprived.

 To secure the amount to which the appropriator is entitled admeasured at his land, no excess can be diverted from the source to cover unreasonable loss in transit. Plaintiffs and Mueller use the water more than 5 miles from point of diversion and in open and in part poorly constructed and maintained ditches, involving excessive evaporation, seepage, and absorption.

 In places their ditch is little or no more than an injuriously wide and shallow brook. They who ask equity must do equity, so, before any injunction in their behalf, this defect must be remedied and any others likewise. In so far as plaintiffs claim right at all times to the flow of Coal merely to avoid dry ditches and to secure the benefit of possible cloudbursts in the mountains, it is unreasonable use, waste, and damage to other appropriators and without right in law.

 Whenever their needs for irrigation are reasonably supplied, the water is open to the next in priority, whatever the effect on plaintiffs' appliances. So, likewise, whenever the volume of water is too small to afford a head practicable for irrigation at plaintiffs' lands. In the circumstances each party will pay his own costs.

Decree accordingly.