**BRODERICK, Superintendent of Banks of New York, v. AMERICAN GENERAL CORPORATION et al.**

**No. 3657.**

Circuit Court of Appeals, Fourth Circuit.
June 11, 1934.

Herbert M. Brune, Jr., of Baltimore, Md. (Brown & Brune, of Baltimore, Md., and Arthur Ofner and Carl J. Austrian, both of New York City, on the brief), for appellant.

Allan H. Fisher and Charles McH. Howard, both of Baltimore, Md. (Reuben Oppenheimer, Morton P. Fisher, Howard H. Conaway, Emory, Beeuwkes, Skeen & Oppenheimer, Fisher & Fisher, William C. Walsh, and Simon E. Sobeloff, all of Baltimore, Md., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is a suit by the superintendent of banks of the state of New York against stockholders of the failed Bank of United States resident in the state of Maryland, to collect the "double liability" assessment made against them pursuant to the law of New York under which the bank was incorporated. The bill was filed against sixty defendants, but against only six of these are judgments asked in excess of $3,000. The bill was dismissed under the authority of Hale v. Allinson, 188 U. S. 56, 23 S. Ct. 244, 47 L. Ed. 380, on the ground that the remedy at law was adequate; and the superintendent of banks has appealed.

The bill alleges that the bank was incorporated under the laws of the state of New York with a capital stock of 1,010,000 shares of the par value of $25 per share; that the bank was insolvent and plaintiff had taken possession of its property pursuant to the laws of New York and was engaged in liquidating its affairs; that he had made an examination of its condition and had determined that its liabilities exceeded its assets by more than $30,000,000; that he had decided that an assessment against stockholders of $25 per share, the full liability under the New York law, was necessary, and had accordingly levied an assessment in that amount; and that pursuant to the law of New York he had made a demand upon all of the stockholders of the bank, including the defendants, for the payment of such assessment. A list of the stockholders made defendants, with the amount of their stock holdings and the assessments made against them, was set forth in the bill; and attached to it was a certified copy of plaintiff's certificate levying the stock assessment and a copy of the demand made upon each stockholder. The certificate recited that the plaintiff had determined to enforce the individual liability of stockholders, that the assessment of $25 per share to provide money for the payment of creditors was necessary, and that an assessment in that amount had been levied. It contained a statement showing that the assets of the bank amounted to $41,774,017.11 and its liabilities to $75,896,549.71, leaving a deficit of $34,122,532.60, which with interest of $10,048,000 upon claims of creditors amounted to $44,170,532.60. The demand upon stockholders recited the assessment and set forth the amount thereof, together with the number of shares of stock held by the stockholder addressed, and the amount of the assessment against him, and demanded of him the payment of the assessment.

As grounds for invoking the jurisdiction of equity the bill alleged that questions to be determined were the necessity for plaintiff's taking over the bank, the amount of its assets and liabilities, and the amount of the insufficiency of the assets to meet liabilities as compared with the amount of capital stock; that the defendants had a community of interest in the subject-matter of the controversy, to wit, the necessity, amount, and validity of the assessment, and that equity should take jurisdiction to avoid multiplicity of suits; that the New York law permits the joining as defendants of stockholders against whom liability is asserted; that plaintiff is acting as a fiduciary and trustee for the creditors of the failed bank; and that questions necessitating

discovery, subrogation, and other equitable remedies might arise, although no facts were alleged showing the necessity for any of these remedies with respect to any of the defendants. Motions to dismiss were filed on the ground that there was a misjoinder of parties and causes of action, that plaintiff had an adequate remedy at law, and, as to the defendants against whom less than $3,000 was asked, that the jurisdictional amount was not involved. As heretofore stated, the bill was dismissed for lack of equity under Hale v. Allinson, supra.

Four questions are presented by the appeal: (1) Whether there was jurisdiction in any aspect of the case as to the defendants against whom a recovery of less than $3,000 was sought; (2) whether equitable rights were asserted or equitable remedies asked which would give the court jurisdiction in equity irrespective of the number of defendants; (3) if not, whether jurisdiction in equity existed because of the number of defendants on the ground of avoiding multiplicity of suits; and (4) if equity was without jurisdiction, should the court have dismissed the bill as to the defendants against whom the jurisdictional amount was involved, or should it have transferred the cause to the law side of the docket to the end that the liability of these defendants might be enforced at law.

■ On the first question, it is admitted that the liability of each of the stockholders is individual and several. Constitution of N. Y. art. 8, § 7; Banking Laws of New York (Consol. Laws c. 2) §§ 80 and 120. The suit, therefore, as to each stockholder involves only the amount of the liability asserted as to him. It is well settled that, in such case, the test of jurisdiction is the amount of each separate claim and not their aggregate amount. Bullard v. City of Cisco, Tex., 290 U. S. 179, 54 S. Ct. 177, 180, 78 L. Ed. 254; Id. (C. C. A. 5th) 62 F.(2d) 313; Woodmen of the World v. O'Neill, 266 U. S. 292, 295, 45 S. Ct. 49, 69 L. Ed. 293; Lion Bonding Co. v. Karatz, 262 U. S. 77, 85, 43 S. Ct. 480, 67 L. Ed. 871; Citizens' Bank v. Cannon, 164 U. S. 319, 321, 17 S. Ct. 89, 41 L. Ed. 451; Walter v. Northeastern R. R. Co., 147 U. S. 370, 374, 13 S. Ct. 348, 350, 37 L. Ed. 206; Georgia Power Co. v. Hudson (C. C. A. 4th) 49 F.(2d) 66, 68, 75 A. L. R. 1439. Where the suit is to enforce the separate liabilities of a number of defendants, the jurisdiction as to a particular defendant does not exist if the amount demanded of him does not equal the jurisdictional amount.

"Although the proceeding is in form but one suit, its legal effect is the same as though separate suits had been begun on each of the separate causes of action." Schwed v. Smith, 106 U. S. 188, 190, 1 S. Ct. 221, 222, 27 L. Ed. 156. And, as said in Walter v. Northeastern R. R. Co., supra, "The rule applicable to several plaintiffs having separate claims, that each must represent an amount sufficient to give the court jurisdiction, is equally applicable to several liabilities of different defendants to the same plaintiff."

The cases relied on by plaintiff to sustain the jurisdiction are not in point; and this is clearly apparent when it is remembered that the plaintiff here is suing, not for the collection and administration of a trust fund, but to recover on a statutory liability of the several defendants. Handley v. Stutz, 137 U. S. 366, 11 S. Ct. 117, 118, 34 L. Ed. 706, was a creditor's bill, brought by a creditor whose claim exceeded the jurisdictional amount and who was suing in behalf of himself and other creditors, to require stock subscriptions to be paid in for administration by the court as a trust fund for the benefit of creditors. A motion to dismiss the appeal in the Supreme Court was made on the ground that the amounts distributable to certain of the creditors were less than required to give the Supreme Court jurisdiction on appeal; but this motion was denied on the ground that appellants, against each of whom a decree for more than the jurisdictional amount had been entered, were not interested in the distribution, and that the bill "could not have been filed by one creditor in his own behalf only, and the case does not fall under that class in which creditors who might have sued severally join in one bill for convenience and to save expense." Conway v. Owensboro Savings Bank & Trust Co. (C. C.) 185 F. 950; Alsop v. Conway (C. C. A. 6th) 188 F. 568; Robertson v. Conway (C. C. A. 6th) 188 F. 579, were all similar suits for the collection, administration, and distribution of trust funds; and jurisdiction as against a stockholder liable for less than the jurisdictional amount was expressly based (see 188 F. 579, at page 584) on the ground that the court, having acquired jurisdiction over the administration of the trust, could have brought in such stockholder by an ancillary proceeding for the adjudication of his liability. Reagan v. Midland Packing Co. (D. C.) 298 F. 500, is to the same effect. Pacific Live-Stock Co. v. Hanley (C. C.) 98 F. 327, involved injunctive relief where the jurisdiction was measured by the value of the right of plaintiff which was being protected against

the several defendants. Dern v. Tanner (D. C.) 60 F.(2d) 626, involved plaintiff's right to use certain streams, and the measure of the amount involved was held to be the value of that right.

Plaintiff places great reliance upon the decision of this court in General Finance Corporation v. Keystone Credit Corporation (C. C. A. 4th) 50 F.(2d) 872, 876. But that was a suit in behalf of all of the stockholders of a corporation who had been defrauded of their stock by another corporation, and its purpose was to recover the stock of which they had been defrauded and in the meantime to protect the assets of the corporation in which they were stockholders. It was held that the smaller stockholders were properly allowed to join as plaintiffs and to participate in the fund realized by the suit, just as small creditors are allowed to join in a creditors' bill. What we said in upholding jurisdiction in that case is sufficient to distinguish it from the case here, where what we have is a mere congeries of suits against the several defendants. We there said: "It is clear, we think, that the matters involved in the suit were (1) the fund (i. e. the stock of the National Company) which complainants were seeking to recover for the benefit of themselves and other stockholders who had been defrauded under the contract in which all had joined, and (2) the assets of the National Company, the protection of which in the interest of former stockholders was asked in the bill. Handley v. Stutz, 137 U. S. 366, 11 S. Ct. 117, 34 L. Ed. 706. In such case it was clearly proper to allow a defrauded stockholder, even though his holdings were of a value less than the jurisdictional amount, to intervene for the purpose of sharing in the recovery of the fund in controversy as well as for the purpose of protecting the assets of the corporation in which he claimed an interest. The case is not one where plaintiffs, having separate and distinct demands, have united for convenience and economy, but where several plaintiffs have united for the assertion of a right in which they have a common and undivided interest. Troy Bank v. Whitehead, 222 U. S. 39, 41, 32 S. Ct. 9, 56 L. Ed. 81."

█ The second question, which we shall consider only with relation to the defendants against whom the jurisdictional amount is asked, is whether the bill asserts equitable rights or asks equitable remedies which would give the court jurisdiction in equity irrespective of the number of defendants. The bill certainly asserts no equitable right or title; and in this it is to be distinguished in the out-set from creditors' bills such as Alsop v. Conway and Robertson v. Conway, supra, where the court was asked to collect in and administer a trust fund in which plaintiffs were interested. While there is an allegation in the bill that plaintiff acts as a fiduciary and trustee for creditors of the failed bank, the court is not called upon to collect and administer a trust fund for their benefit. Plaintiff merely asks recovery on a statutory liability; and any moneys collected by him under judgments which may be obtained will be handled, not under the direction of the court, but pursuant to the provisions of the New York statute. The jurisdiction of the court to protect and administer trust funds, then, is not remotely involved. And no facts are alleged which could serve as the basis for awarding equitable remedies, such as discovery or subrogation. The only ground seriously urged as a basis of equity jurisdiction, aside from the joinder to avoid multiplicity of suits, is the alleged necessity for an accounting. We do not think, however, that the case is one for an accounting in equity. No accounting between the plaintiff and defendants is involved (1) because the establishment of the necessity for the assessment, although involving the accounts of the bank, is not a matter of accounting between the parties but of the establishment of a fact upon which the right to recover a statutory liability depends; and (2) because the assessment by the commissioner of banks is conclusive in the absence of attack for fraud, illegality, bad faith, or obvious error.

█ It is held that equity has jurisdiction to award an accounting between parties where there are involved mutual accounts or accounts of such complication that it is not practicable to try the case at law before a jury. Fowle v. Lawrason, 5 Pet. 495, 8 L. Ed. 204; Kirby v. Lake Shore, etc., R. Co., 120 U. S. 130, 7 S. Ct. 430, 30 L. Ed. 569; Davis v. Bessemer City Cotton Mills (C. C. A. 4th) 178 F. 784, 792; Quality Realty Co. v. Wabash Ry. Co. (C. C. A. 8th) 50 F.(2d) 1051, 1055; Goffe & Clarkener, Inc., v. Lyons Milling Co. (D. C.) 26 F.(2d) 801. This has been denied where no trust relationship is involved. Equitable Life Assurance Society v. Brown, 213 U. S. 25, 44, 29 S. Ct. 404, 53 L. Ed. 682. But, however this may be, it is settled that equity will not take jurisdiction because of the complication of accounts unless the remedy at law is clearly inadequate; and where the practice at law permits reference to auditors or referees there is seldom occasion for the exercise of the jurisdiction. Pomeroy's Equity Jurisprudence

(4th Ed.) vol. 5, § 2357. Under the federal practice, cases involving complicated accounts can be referred to auditors for the simplification of the issues involved, and the difficulties of trial at law of actions involving such accounts are thus in large measure obviated. Ex parte Peterson, 253 U. S. 300, 40 S. Ct. 543, 64 L. Ed. 919; Veneri v. Draper (C. C. A. 4th) 22 F.(2d) 33.

■ But this case does not involve an accounting, which is a matter of settling accounts between the parties. The insolvency of the bank and the necessity for an assessment of the stock liability may involve the proof of complicated facts; but as has been frequently held this is no ground upon which equity can assume jurisdiction. Curriden v. Middleton, 232 U. S. 633, 636, 34 S. Ct. 458, 58 L. Ed. 765; U. S. v. Bitter Root Development Co., 200 U. S. 451, 472, 26 S. Ct. 318, 50 L. Ed. 550; City of Sedalia v. Standard Oil Co. of Indiana (C. C. A. 8th) 66 F.(2d) 757, 761.

■ But in addition to this, we think that the certificate of the superintendent of banks, in the absence of attack on the ground of fraud, illegality, bad faith, or obvious error, is conclusive as to the necessity for the stock assessment. That assessment was made pursuant to the laws of New York. The stockholders in purchasing stock in a corporation of that state consented to the obligations imposed by its laws upon the ownership of such stock; and the effect of the assessment by the superintendent of banks and his certificate thereon is to be determined by reference to those laws. Article 8, § 7, of the Constitution of New York, provides: "The stockholders of every corporation and joint-stock association for banking purposes, shall be individually responsible to the amount of their respective share or shares of stock in any such corporation or association, for all its debts and liabilities of every kind."

Section 80 of the Banking Law, providing for assessing the stockholders' liability in the case of insolvent banks, and creating in favor of the superintendent of banks a cause of action to recover the amount assessed against each stockholder, is as follows: "Whenever a liability of stockholders for the amount of their respective shares of any such corporation exists, and the superintendent has duly taken possession of the property and business of such corporation, and has duly notified creditors to present and make proof of their respective claims and the last day to present such claims has expired, and he has determined from his examination of its affairs that the reasonable value of the assets of such corporation is not sufficient to pay its creditors in full, he may enforce the individual liability of such stockholders in whole or in part. In case he determines to enforce such liability, he shall make demand in writing upon such stockholders by causing such demand to be enclosed in sealed envelopes addressed and mailed, postage prepaid, to said respective stockholders at their last known places of address as the same appear upon the stock ledger of such corporation or at their last known address if no address appears in said ledger. Such demand shall state the total amount assessed by the superintendent against the stockholders and the equal and pro rata share assessed against each stockholder for each share of stock, and the total amount of such assessment for all the shares of stock of such stockholder. Such demand shall also fix a date, not earlier than thirty days from the date of such notice, upon which such stockholders shall be required to pay such assessment to the superintendent. In case any such stockholder shall fail or neglect to pay such assessment within the time fixed in said notice, the superintendent shall have a cause of action, in his own name as superintendent of banks, against such stockholder either severally or jointly with other stockholders of such corporation, for the amount of such unpaid assessment or assessments, together with interest thereon from the date when such assessment was, by the terms of said notice, due and payable. In any such action, the written statement of the superintendent, under his hand and seal of office, reciting his determination to enforce the individual liability, or any part thereof, of such stockholders, and setting forth the value of the assets of such corporation and the liabilities thereof, as determined by him after examination and investigation, shall be presumptive evidence of such facts as therein stated."

Section 120 of the Banking Law contains the following provisions:

"The individual liability of * * * stockholders for the contracts, debts, and engagements of the bank * * * shall be governed exclusively by the provisions of this section and section eighty of this chapter.

"The stockholders of every bank shall be individually responsible, equally and ratably and not one for another, for all contracts, debts and engagements of the bank, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares. * * *

"All actions or proceedings to enforce the

liability of stockholders under this section shall be taken and prosecuted only in the name of the superintendent or the receiver, as the case may be."

■ These statutes were adopted in 1908 after the banking troubles of the preceding year; and their purpose was to provide a plan for the liquidation of banks under a department of the state similar to that provided for national banks under the Comptroller of the Currency. Van Tuyl v. Scharmann, 208 N. Y. 53, 101 N. E. 779, 782; Broderick v. Aaron, 151 Misc. 516, 272 N. Y. S. 219, 232, decided April 11, 1934. As said in the case last cited: "The Banking Law of this state was amended and revised to conform generally our scheme of bank regulation, liquidation, and assessment enforcement to the statutory system applicable to national banks conducted through the Comptroller of Currency. Matter of Union Bank, 204 N. Y. 313, 97 N. E. 737; Van Tuyl v. Scharmann, 208 N. Y. 53, 101 N. E. 779. See Report of the Commission on Banks, December, 1907; Report of Superintendent of Banks, 1908, Senate Document No. 6, 131 Session, page XXIX. The test of the accrual of the cause of action laid down by the federal courts should therefore control."

■ It is, of course, well settled that the decisions of the Comptroller of the Currency are conclusive as to the assessments levied against stockholders of insolvent national banks for the purpose of enforcing their statutory liability. Kennedy v. Gibson, 8 Wall. 505, 19 L. Ed. 476; Studebaker v. Perry, 184 U. S. 258, 22 S. Ct. 463, 46 L. Ed. 528; Liberty Nat. Bank v. McIntosh (C. C. A. 4th) 16 F.(2d) 906, 909. In the case last cited, this court said: "The decisions of the Comptroller of the Currency are not subject to collateral attack, nor is his assessment against shareholders, and the amount thereof open to review; but, on the contrary, neither the bank nor the shareholders, clearly in the absence of fraud charged and proved, are entitled to a judicial determination of any question involved in his decision either as to the solvency, the sum due creditors and the amount of assessments as ordered, such matters one and all being exclusively within the judgment and discretion of the Comptroller, and as to which he acts in a quasi judicial capacity. Kennedy v. Gibson, supra, 75 U. S. [8 Wall.] 498, 19 L. Ed. 476; Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; United States v. Knox, 102 U. S. (12 Otto) 422, 26 L. Ed. 216; Richmond v. Irons, 121 U. S. 27, 7 S. Ct. 788, 30 L. Ed.

864; Schrader v. Bank, 133 U. S. 67, 10 S. Ct. 238, 33 L. Ed. 564; Bushnell v. Leland, 164 U. S. 684, 17 S. Ct. 209, 41 L. Ed. 598; Hightower v. Bank, 263 U. S. 351, 44 S. Ct. 123, 68 L. Ed. 334; Deweese v. Smith (8th C. C. A.) 106 F. 438, 66 L. R. A. 971."

■ While the question here involved seems not to have been decided by the Court of Appeals of New York, it has been before the Supreme Court of that state in Broderick v. Adamson, 148 Misc. 353, 265 N. Y. S. 804, 822, and the language of Mr. Justice Lydon in dealing with the question is convincing. Said he: "It is my opinion that this certificate, in the absence of a showing of fraud, illegality, bad faith, or obvious error, constitutes conclusive evidence of the facts therein stated. This is the rule of the federal courts in actions to enforce the statutory liability of stockholders of national banks. Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476; Studebaker v. Perry, 184 U. S. 258, 22 S. Ct. 463, 46 L. Ed. 528. The National Banking Act * * * contains no provision similar to that of section 80, and the rule applied in the federal jurisdictions rests upon no positive statute but merely upon the presumption of good faith and regularity attending the performance of official acts. Isaac v. Marcus, 258 N. Y. 257, 179 N. E. 487; Matter of Broderick (Matter of Bank of Canastota), 235 App. Div. 281, 257 N. Y. S. 382; Matter of Lunghino, 176 App. Div. 285, 163 N. Y. S. 9. There is neither logic nor reason in the principle that the certificate of the superintendent may be overthrown upon the basis of mere differences of opinion between the superintendent and the experts and witnesses of the defendants in relation to reasonable values. The determination of the superintendent is essentially and peculiarly an administrative act resting upon the exercise of sound business judgment and discretion. Banking Law, § 80; Matter of Union Bank, 176 App. Div. 477, 163 N. Y. S. 485. If not infected with bad faith or obvious error, or violative of any fixed legal principle, it should not be subject to attack upon the theory that the preponderance of evidence, in the opinion of the trier of the facts, indicates that the values as fixed by the superintendent are merely erroneous. Liquidation presupposes the prompt and speedy conversion of assets to cash in the interests of creditors, and the right to enforce and collect the assessment should not be subject to defeat by the mere balancing of the opposing opinions and views of expert witnesses upon the questions of reasonable values. If it should ultimately appear that the

assessment was unnecessary in whole or in part, the stockholders are entitled to share in any remaining surplus. Banking Law, § 79. As between the stockholder and the creditor, it is the convenience of the latter that is preferred by the courts."

While this is not the expression of the highest court of the state in the interpretation of its statute, it is entitled to great weight, not only because it emanates from one of the courts of the state charged with the duty of applying the statute, but also because of its appeal as being inherently reasonable and necessary. The statute gives a cause of action for the amount of the assessment made against each stockholder, not for the amount which the court may deem necessary to meet the bank's indebtedness. The superintendent of banks is authorized to determine himself the necessity for the assessment; not to bring an action to have the court determine it. He may sue the stockholders severally as well as jointly for the amounts due under the assessments levied; and surely it was not contemplated by the Legislature that in each suit the court should wade through all the facts and figures involved in the bank's assets and liabilities to make the determination which the Legislature had already authorized the superintendent himself to make, with possibility of conflict between the decisions of different courts in different cases affecting stockholders of the same bank. It is said that the certificate of the superintendent of banks is made only presumptive evidence by the last sentence of section 80; but we think that by this sentence it was intended to make clear that the certificate of the superintendent should be accorded that presumption of correctness which attaches to official acts of administrative officers, not to detract from the strength of the presumption which would attach to it in the absence of statute. We think that the interpretation placed upon the statute by Mr. Justice Lydon is correct. We shall follow it until some New York court of higher jurisdiction holds to the contrary.

■ Since, therefore, the bill asserts no equitable rights and asks no equitable remedies which would give the court jurisdiction in equity irrespective of the number of defendants, we come to the third question: Is there jurisdiction in equity on the ground of avoiding a multiplicity of suits because of the joinder of a number of defendants? We agree with the court below that this question has been answered in the negative by the Supreme Court in Hale v. Allinson, 188 U. S. 56, 71,

23 S. Ct. 244, 47 L. Ed. 380, and we understand that plaintiff admits that there is no jurisdiction in equity on the ground of avoiding multiplicity of suits if the certificate of the superintendent of banks is entitled to the weight given it in Broderick v. Adamson, supra.

The question of equity jurisdiction on the ground of avoiding multiplicity of suits is an inviting one, and one which has been fruitful of much controversy. In the federal courts, however, the question is simplified by section 267 of the Judicial Code, 28 USCA § 384, which gives congressional emphasis to the rule that suits in equity shall not be sustained where a plain, adequate, and complete remedy may be had at law; by section 921 of the Revised Statutes, 28 USCA § 734, which authorizes a consolidation of actions where they may reasonably be consolidated; and by the Seventh Amendment to the Constitution, which requires the preservation in law actions of trial by jury. Whatever may be said in other jurisdictions as to the superior advantages of trying a number of actions at law as one suit in equity because some common question of law or fact is involved, there is little to be said in its favor in the federal courts where the presence of such common question may furnish ground for consolidation, so that even at law only one trial of the common question will be required. Mutual Life Ins. Co. v. Hillmon, 145 U. S. 285, 293, 12 S. Ct. 909, 36 L. Ed. 706; Wiede v. Ins. Co. of North America, Fed. Cas. No. 17,617; Columbia-Knickerbocker Trust Co. v. Abbot (C. C. A.) 247 F. 833, 836. And, as stated above, the difficulties of trying complicated issues of fact before a jury are largely obviated by the practice available in the federal courts of referring such issues to auditors. Ex parte Peterson, supra. And where to the lack of substantial advantage is added the constitutional requirement of trial by jury in actions at law, the argument against equity jurisdiction, merely because there are a number of plaintiffs and defendants and a common question of law or fact, is conclusive. It must be manifest that an action at law does not lose its character as such because another action at law exists in favor of the same plaintiff or against the same defendant; for the character of an action is determined by the questions which it involves, not by the fact that other actions involve the same questions. It would be absurd to say that a suit against one stockholder to enforce his statutory liability is at law with right of jury trial guaranteed, but that, if by chance other persons with

whom he is in no way connected are also liable, he may be sued with them in equity and a jury trial denied him. The guarantees of the Constitution are substantial rights of the citizen which may not be thus whistled away for reasons of supposed convenience. See Georgia Power Co. v. Hudson (C. C. A.) 49 F.(2d) 66, 75 A. L. R. 1439 and note at page 1444.

In the recent case of Matthews v. Rodgers, 284 U. S. 521, 529, 530, 52 S. Ct. 217, 221, 76 L. Ed. 447, the Supreme Court dealt with a suit by a number of plaintiffs to enjoin the collection of a license tax. There was a remedy at law by paying the tax and suing for its recovery; but jurisdiction in equity was invoked on the ground of avoiding a multiplicity of suits. In denying the jurisdiction on that ground, the court said:

"Appellees' bill of complaint does not state a case within the jurisdiction of equity to avoid multiplicity of suits. As to each appellee a single suit at law brought to recover the tax will determine its constitutionality, and no facts are alleged showing that more than one suit will be necessary for that purpose. See Boise Water Co. v. Boise City, 213 U. S. 276, 285, 286, 29 S. Ct. 426, 53 L. Ed. 796; Dalton Adding Machine Co. v. State Corporation Comm., 236 U. S. 699, 700, 701, 35 S. Ct. 480, 59 L. Ed. 797.

"But it is said that, since each appellee must pay the tax to avoid penalties and criminal prosecution, all must maintain suits for the recovery of the tax unconstitutionally exacted, in order to protect their federal rights, and that, to avoid the necessity of the many suits, equity may draw to itself the determination of the issue necessarily involved in all the suits at law.

"In general, the jurisdiction of equity to avoid multiplicity of suits at law is restricted to cases where there would otherwise be some necessity for the maintenance of numerous suits between the same parties, involving the same issues of law or fact. It does not extend to cases where there are numerous parties plaintiff or defendant, and the issues between them and the adverse party are not necessarily identical."

And see United States v. Bitter Root Development Co., 200 U. S. 451, 479, 26 S. Ct. 318, 50 L. Ed. 550; Kelley v. Gill, 245 U. S. 116, 120, 38 S. Ct. 38, 62 L. Ed. 185; New Jersey & N. C. Land & Lumber Co. v. Gardner-Lacy Lumber Co. (C. C. A. 4th) 178 F. 772, 783; Buchanan Co. v. Adkins (C. C. A. 4th) 175 F. 692, 701; Carey v. McMillan (C. C. A. 8th) 289 F. 380.

But there is no occasion to examine at large questions of equity jurisdiction based on avoidance of multiplicity of suits; for the decisions of the federal courts clearly establish that such jurisdiction is not available in suits to recover the statutory liability from stockholders of banks in case where there is no independent ground of equitable jurisdiction. In Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476, suit in equity was brought against a number of stockholders to recover the amounts due under an assessment against them, and the court pointed out that, where the whole amount of the liability had been assessed, the remedy was at law. In Hale v. Allinson, supra, 188 U. S. 56, 23 S. Ct. 244, 253, 47 L. Ed. 380, a suit was brought in equity against a number of stockholders in a state bank to enforce their stockholders' liability. The bill assumed the conclusiveness of a decree of a court of a foreign state approving the assessment; and the question as to jurisdiction in equity on the ground of avoiding multiplicity of suits was squarely presented. The Supreme Court reviewed the authorities at great length and repudiated this as ground of jurisdiction in equity in such a case, citing with approval the opinion of Judge McPherson in the lower court, as follows: "Assuming that position to be sound (i. e. that the decree of the foreign state was conclusive) * * * it is clear that only two classes of questions remain to be decided: The first is whether a given stockholder was ever liable as such; and the second is whether, if he were originally liable, his liability has ceased, either in whole or in part. Manifestly, as it seems to me, the defendants have no common interest in these questions, or in the relief sought by the receiver against each defendant. The receiver's cause of action against each defendant is, no doubt, similar to his cause of action against every other, but this is only part of the matter. The real issue, the actual dispute, can only be known after each defendant has set up his defense, and defenses may vary so widely that no two controversies may be exactly or even nearly alike. If, as is sure to happen, differing defenses are put in by different defendants, the bill evidently becomes a single proceeding only in name. In reality it is a congeries of suits with little relation to each other, except there is a common plaintiff who has similar claims against many persons. But as each of these persons became liable, if at all, by reason of a contract entered into by himself alone, with the mak-

ing of which his codefendants had nothing whatever to do, so he continues to be liable, if at all, because he himself, and not they, has done nothing to discharge the liability. Suppose A to aver that his signature to the subscription list was a forgery; what connection has that averment with B's contention that his subscription was made by an agent who had exceeded his powers? or with C's defense that his subscription was obtained by fraudulent representations? or with D's defense that he has discharged his full liability by a voluntary payment to the receiver himself? or with E's defense that he has paid to a creditor of the corporation a larger sum than is now demanded? These are separate and individual defenses, having nothing in common; and upon each the defendant setting it up is entitled to a trial by jury, although it may be somewhat troublesome and expensive to award him his constitutional right. But, even if the ground of diminished trouble and expense may sometimes be sufficient, I should still be much inclined to hesitate before I conceded the superiority of the equitable remedy in the present case. Such a bill as is now before the court is certain to be the beginning of a long and expensive litigation. The hearings are sure to be protracted. Several, perhaps many, counsel will no doubt be concerned, whose convenience must be consulted. The testimony will soon grow to be voluminous. The expense of printing will be large. The costs of witnesses will not in any degree be diminished, and, if some docket costs may be escaped, this is probably the only pecuniary advantage to be enjoyed by this one cumbersome bill over separate actions at law."

■ We come then to the question as to what should have been done with the bill as to the six defendants as to whom the jurisdictional amount was involved. Although for the reasons stated it did not allege a cause within the jurisdiction of equity, it did, as to each of these defendants, allege a good cause of action at law; and we think that the same course should have been followed as in the case of Aufdenkamp v. L'Herrison (C. C. A. 9th) 56 F.(2d) 344, i. e., the case should have been transferred to the law side of the court with leave to amend in accordance with Equity Rule 22, 28 USCA § 723, and section 274a of the Judicial Code, 28 USCA § 397. See Liberty Oil Co. v. Condon Bank, 260 U. S. 235, 241, 43 S. Ct. 118, 67 L. Ed. 232; Wood v. Phillips (C. C. A. 4th) 50 F.(2d) 714; Clarksburg Trust Co. v. Commercial Casualty Co. (C. C. A. 4th) 40 F.(2d) 626. Although different causes of action are alleged against the different defendants, this can be cured by an order severing the action so as to permit the plaintiff to proceed separately against each defendant, or by an order approving the consolidation under R. S. § 921 (28 USCA § 734).

The decree appealed from will therefore be reversed, and the cause will be remanded, with direction to the court below to dismiss the bill for lack of jurisdiction as to all defendants against whom a recovery not exceeding $3,000 is asked, and to transfer the cause to the law side of the docket as to the other defendants, and there to determine whether the action against these defendants shall be allowed to remain consolidated or whether a severance shall be ordered. The costs on this appeal will be divided.

Reversed and remanded, with directions.