**AMERICAN TRUST CO. et al. v. GRUT.**

No. 7913.

Circuit Court of Appeals, Ninth Circuit.

Nov. 12, 1935.

James M. Wallace, of San Francisco, Cal., and Wade W. Moore, of Pittsburg, Cal., for appellants Pacini and others.

C. W. White, of Hayward, Cal., for appellant Lucas.

Tinning & DeLap, of Richmond, Cal., for appellants American Trust and others.

Albert C. Agnew, William A. Boekel, John D. Gallaher, and Carroll Single, all of San Francisco, Cal., for appellee.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Review is here sought of a decree rendered in favor of plaintiff, as receiver of the First National Bank of Bay Point, a national banking association, against certain stockholders in that bank, and their transferors who, it is alleged in the bill, made the transfers in question "with knowledge of such (failure of bank to meet its obligations) impending failure." In the decree rendered in the court below, judgments were granted against all the defendants who were stockholders at the time of the failure of the bank for a 100 per cent. assessment, and against the transferors for the same amount, subject to the proviso that the judgments against the transferors be credited with any amount paid by their transferees. From this decree, the transferors (defendants who were not stockholders at the time the bank became insolvent but who had transferred stock, as found by the court with knowledge of the impending insolvency of the bank) appeal, asserting several claims of error, only one of which need be considered here. Such contention is that a court of equity has no jurisdiction of the subject of the suit.

Liability of shareholders of a national banking association, commonly referred to as "double liability," arises by virtue of statute (United States ex rel. Citizens' Nat. Bank v. Knox, 102 U.S. 422, 26 L.Ed. 216), and it is for such liability that recovery was granted below.

The first national bank under our Constitution was chartered as "Bank of the United States" by Congress on February 25, 1791, one-fifth of the stock of which was subscribed for by the government of the United States. On March 7, 1819, it was held that Congress did have power to charter a national bank. McCulloch v. Maryland, 4 Wheat. (17 U.S.) 316, 4 L.Ed. 579. However, the troublesome experience of banks so chartered limited the successful operation of any substantial number of such banks.

Until about 1860, state banks flourished with varying degrees of success, practically all of which issued their own bank notes. At various times, these notes were subject to a discount in exchange, which was more variable than the weather, for several reasons, such as the weakness of the banks themselves, and because of counterfeit notes.

156

A large amount of credit was necessary during the Civil War, and one of the proposals then made by financiers was that, under a general law of Congress, banks be permitted to organize, and issue notes to be secured by government bonds, deposited with an officer of the government. It was also proposed to safeguard the depositors by making the stockholder in such banks liable to the amount of the par value of his stock in addition to the amount invested in the stock.

Accordingly the Act of February -25, 1863, was passed by Congress authorizing the organization of national banking associations, and the issuance of national bank notes for the purpose above stated. It was also provided [chapter 58, § 12 (12 Stat. 668)]: "For all debts, contracted by such association for circulation, deposits, or otherwise, each shareholder shall be liable to the amount, at their par value, of the shares held by him in addition to the amount invested in such shares." Up to the time of this act, the only way a national bank could be organized was by special charter of Congress. The foregoing act was repealed by the Act of June 3, 1864, but this latter act provided [chapter 106, § 12 (13 Stat. 102)]: "The shareholders of each association formed under the provisions of this act, and of each existing bank or banking association that may accept the provisions of this act, shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares." See 12 U.S.C.A. p. 111, § 63.

It should be here noted that the statute itself gave no right to recover the double liability from anyone except a "shareholder." Under this statute it was held that the remedy to recover a 100 per cent. assessment from a "shareholder" must be at law. See Kennedy v. Gibson, 8 Wall. (75 U.S.) 498, 19 L.Ed. 476 (decided Dec. 13, 1869); Casey v. Galli, 94 U.S. 673, 24 L.Ed. 168 (decided March 27, 1877); United States ex rel. Citizens' Nat. Bank v. Knox, supra (decided Dec. 20, 1880); Parker v. Robinson, 18 C.C.A. 36, 71 F. 256 (decided Nov. 15, 1895); Hale v. Allinson, 188 U.S. 56, 23 S.Ct. 244, 47 L.Ed. 380 (decided Jan. 19, 1903); Bailey v. Tillinghast, 40 C.C.A. 93, 99 F. 801 (decided Feb. 12, 1900). In connection with a similar state statute, see Broderick v. American General Corporation (C.C.A.) 71 F.(2d) 864, 94 A.L.R. 1359.

As above stated, the statute, as it existed prior to the act hereinafter mentioned, permitted recovery only against a "share holder"; but nevertheless equity entertained suits to set aside fraudulent transfers, so that one transferring stock in order to avoid the double liability was held to be a shareholder and liable even though the amount for which judgment was asked was a 100% assessment. See Bowden v. Santos (C.C.Va.) 3 Fed.Cas. 1034, No. 1,716 (decided May, 1877); Bowden v. Johnson, 107 U.S. 251, 2 S.Ct. 246, 27 L.Ed. 386 (decided Mar. 5, 1883); Zimmerman v. Carpenter (C.C.S.D.) 84 F. 747 (decided Jan. 31, 1898); Bailey v. Tillinghast, supra (decided Feb. 12, 1900). Such procedure was both reasonable and necessary, for if one, who had transferred his stock prior to insolvency in order to avoid the double liability, were sued at law to recover a 100 per cent. assessment, a showing that he was not a "shareholder" at the time of insolvency would be a complete defense to such action. Relief against the fraudulent transfer could be obtained only in equity.

Therefore, prior to the act hereinafter mentioned, where a 100 per cent. assessment was sought, the law with respect to the remedy to be used, was: (1) If against a "shareholder" the sole remedy was at law; (2) if against one who had made a fraudulent transfer of his stock, then the sole remedy was in equity.

■ The Act of December 23, 1913, c. 6, § 23 (38 Stat. 273), provided: "The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same

extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure." 12 U.S.C.A. p. 112, § 64.

Section 26 of this act (38 Stat. 274) provided: "All provisions of law inconsistent with or superseded by any of the provisions of this Act are to that extent and to that extent only hereby repealed."

It would appear, therefore, that the part of the Act of June 3, 1864, quoted above (12 U.S.C.A. p. 111, § 63), was repealed by the Act of December 23, 1913, because the provision in the latter act supersedes the part quoted above from the Act of June 3, 1864.

The effect of the Act of December 23, 1913 (12 U.S.C.A. p. 112, § 64) was to grant new rights to those who could enforce the double liability, by making the "shareholders" liable, and by creating further liability on their transferors who "transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure * * * to the extent that the subsequent transferee fails to meet such liability." In other words, prior to the last act mentioned, a "shareholder" was subject to the double liability, and although the Act of June 3, 1864, did not specify whether the remedy to recover for this liability was in law or in equity, the courts held that the remedy was in law, as shown above, where a full assessment was at issue. At that time, however, in order to establish that a *transferor*, who had made a fraudulent transfer of his stock, was in fact a "shareholder" although the *transferee* appeared of record to be the "shareholder," it was necessary to sue in equity to set aside the transfer. And if such transfer were set aside, the *transferee* would not be subject to the double liability, for the reason that if the transfer were set aside, it would be the *transferor* who would be the "shareholder."

By the Act of December 23, 1913, there was added the further right to recover for the liability both from the transferor and transferee, in the event of a transfer made under the conditions specified in the statute. Here again, however, the act was silent with respect to the remedy to be used for the enforcement of this new right. This court held that where a 100 per cent. assessment was sought from one who had transferred his shares "within sixty days next before the date of the failure of such association to meet its obligations," the remedy was in law. Aufdenkamp v. L'Herrison (C.C.A.) 56 F.(2d) 344 (rehearing denied April 4, 1932). Our attention has not been directed to any case directly holding that where liability for a 100 per cent. assessment was sought to be imposed against a transferor who had transferred his shares "with knowledge of such impending failure," the remedy is or is not in equity, although it is indicated in Armstrong v. McAdams (C.C.A.8) 72 F.(2d) 314, that the remedy is in law. Under the words of the statute the liability is imposed where there is a transfer (1) "within sixty days next before the date of the failure of such association to meet its obligations," or "(2) with knowledge of such impending failure." In both events, the remedy to recover a 100 per cent. assessment should be the same, and when, as here, a recovery is sought of a 100 per cent. assessment from a transferor who has transferred his shares "with knowledge of such impending failure," we hold that the remedy is at law, the same as when a recovery is sought under condition (1) hereinabove enumerated.

Plaintiff contends that because of the complexity of the transfers of the stock involved in the instant case, "the jurisdiction of equity was necessary to trace out the liability and place the proportionate amount thereof upon the proper parties." To this we do not accede. It would be as easy to prove a transfer was made "with knowledge of such impending failure" in law as in equity. It would likewise be as easy to prove that a defendant was either a *transferor* or a *transferee,* in law as in equity.

By seeking a remedy under the statute through an effort to impress liability against both transferors and transferees and by failing to set forth appropriate allegations necessary in a suit to set aside the transfers, the plaintiff thereby elected the remedy at law; but notwithstanding such election the court below, over ob-

jection by appellants and without a waiver on their part, proceeded to try the cause as a suit in equity and entered a decree therein.

Such decree cannot stand for reasons above indicated.

We hold the remedy in the instant case to be by an action at law.

The decree herein is accordingly reversed. The case is hereby transferred to the law side of the court and remanded to the court below, with instructions to determine the same as an action at law after allowing the plaintiff to amend his complaint if he so desires.