**YUBA CONSOLIDATED GOLD FIELDS**
**v. KILKEARY et al.**

No. 6512.

United States District Court
N. D. California. N. D.

Feb. 5, 1952.

Eugene M. Prince, Southall R. Pfund, and Robert M. Searls, all of San Francisco, Cal., and Harry B. Seymour, of Sacramento, Cal., for plaintiff.

Treadwell & Laughlin and Goldstein, Barcelou & Goldstein, of San Francisco, Cal., Gray & Hewitt and Rich, Carlin & Fuidge, all of Marysville, Cal., for defendants.

LEMMON, District Judge.

The plaintiff, a Maine corporation, has filed in this Court a complaint "for relief against multiplicity of actions, for declaratory relief, for an injunction, and for other appropriate relief".

In its opening memorandum, the plaintiff describes its complaint as being "in equity in the nature of a bill of peace", seeking "to avoid a multiplicity of hundreds of legal actions by determining in one equity suit the liability asserted in all claims against Yuba (plaintiff) for damages resulting from floods on the Yuba River in November and December, 1950". The complaint itself, however, raises the dire ante of potential suits to "thousands".

The original complaint, filed on June 19, 1951, specifically named 23 defendants and also included 500 unnamed or "ABC" corporations and 2,000 John Doe defendants. On July 5, 1951, the complaint was amended so as to name 96 of the John Does and so as to increase the number and the total money-amount of the actions alleged to have been brought in the Superior Court of Yuba County, California, against the plaintiff from five to six and from $524,250 to $853,-964.98, respectively.

Except as thus amended, the material allegations of the complaint are as follows:

Since March 18, 1905, the plaintiff has been engaged in mining gold by the dredging process in Yuba County and elsewhere in California.

Beginning on November 12, 1950, a series of storms brought heavy precipitation to the section of the Sierra Nevada from the Feather River on the north to the Kern River on the south. The rainfall caused the Yuba River to carry a greater volume of water than had ever before passed down the stream during its recorded history.

On or about November 20, 1950, flood waters of the Yuba overflowed its natural south banks, and thereafter, downstream from the points of overflow, the water broke the south retaining wall—a cobble embankment that the plaintiff had constructed about the year 1925 as a part of approved projects of flood and debris control.

The river's overflow spread over an area of approximately 100 square miles in Yuba County. The flooded area included large acreages of farm lands, about 2,669 separate ownerships of real property, and more than seven residential and business communities. The entire area contained about 8,000 inhabitants.

The flood caused an unascertainable amount of heavy damage. Claimed items include damage to agricultural lands, orchards and crops; to highways, farm produce, machinery, walls and foundations of buildings, furnishings and personal effects in dwellings; to stranded automobiles, and to business, residential and industrial property. There are also claims of lost profit due to interruption of business.

Because of the flood a state of emergency was declared by the Board of Supervisors of Yuba County, lasting from November 20, 1950, to December 11, 1950. During this period, about 8,000 persons were forced from their homes for varying lengths of time, and received flood and disaster relief from the American Red Cross and others in Marysville.

During and after the flood the charge was publicly made that the plaintiff's dredg-

ing in the Yuba River had caused the flood, and that the plaintiff was responsible for the damage. During November and December, 1950, meetings were held at which various defendants discussed ways and means for prosecuting their claims against the plaintiff, and agreements were circulated providing for payment by claimants of one per cent of their respective claims into a fund to be expended for the prosecution of actions against the plaintiff.

One such action was filed in the Superior Court of Yuba County on November 28, 1950. Details concerning that suit and several similar actions need not be rehearsed here.

The defendants who have sued the plaintiff assert that the latter's operations in the Yuba River were responsible for the flood and the resulting damage. Similar charges are made by "other potential claimants".

Such allegations, the complaint continues, are unfounded. The plaintiff's operations had no causal connection with the flood, were at all times conducted with due care in accordance with good engineering practice and in conformity with the requirements of Federal permits duly issued by statutory authority, and were part of projects approved by statute for debris and flood control that have been going forward on the Yuba River for more than 50 years.

The complaint here goes into considerable detail regarding the plaintiff's operations on the Yuba River. However relevant such details might be to the consideration of the case on its merits, they are not pertinent to the present question of multiplicity vel non, or to the other problems now before this Court.

The prayer of the complaint, however, does ask for declaratory relief "with respect to plaintiff's rights under the statutes pursuant to which * * * federal permits were issued" to it. For that reason, it is pertinent to set out the relevant text of a "War Department Permit" issued to the plaintiff by the late Robert P. Patterson, as Acting Secretary of War, under date of February 25, 1944: "(a) That this authority grants no vested rights of any kind, nor any exclusive privileges, but is revocable at the will of the Secretary of War. It gives no right, title, or interest in property of any kind whatsoever, whether real or personal, public or private; it does not authorize any injury to public or private property, or invasion of private rights, or any infringement of Federal, State, or local laws or regulations, * * *."

Counsel for one group of defendants contends that the effect of the foregoing provisions should not be considered in the present posture of the case. In view of the prayer for declaratory relief, referred to above, the Court deems it proper to deal with this question in the present opinion, infra.

Finally, the complaint alleges that the "potential claims" of the unnamed defendants "may run into sums aggregating millions of dollars", and that if the claims "should be asserted and established in amounts comparable with the damage prayers of the six suits on file, the resulting liability would exceed the value of the plaintiff's assets and would be beyond its ability to pay".

Wherefore it is prayed that the Court hear and determine all claims of the defendants against the plaintiff with respect to the matters alleged in the complaint, and upon final hearing decree such claims to be without right; that this Court permanently enjoin the defendants from the prosecution, "except in this court and cause", of any suit against the plaintiff for the recovery of any damage alleged to have been caused by the flood; that an injunction pendente lite be issued; and that, as already stated, declaratory relief be granted with respect to the plaintiff's rights under the statutes pursuant to which the Federal permits were issued.

Motions to dismiss were filed by three groups of defendants. Each of these groups has brought an action in the Superior Court of Yuba County. The plaintiff herein has removed two of those actions to this Court. In two state court actions brought by the third group, summons has not been served, and consequently those cases have not been removed, according to a statement in the plaintiff's briefs in this Court. The

1002

plaintiffs in all these state cases are among the named defendants here.

Answers have been filed by a fourth group of defendants and also by a single defendant—the Fidelity and Casualty Company, one of the "ABC Corporations". In the Court's view of this case, it is not necessary to give a summary of these answers, except to state that the Fidelity and Casualty Company alleges it has filed a complaint against the plaintiff herein in the Superior Court of Yuba County for $473.37, and that its case is not a proper one for removal to this Court because of the lack of the jurisdictional amount.

■ *1. The Single Fact that a Multitude of Suits May be Prevented By Equity's Assumption of Jurisdiction Is Not In All Cases Enough to Sustain It.*

On the threshold of its argument in favor of a "bill of peace", the plaintiff concedes that relief against multiplicity of suits will not be granted where it will not "further the practical administration of justice". Generous as this concession may seem at first blush, in reality it does not go far enough. Considerations other than merely "practical" ones—Constitutional inhibitions, for example—may well cause chancery to stay its hand.

The various elements that will lead a court of equity to accept or to decline jurisdiction in a given case will be examined hereinafter in their proper place.

*(a) Each Case Must be Decided on Its Own Merits*

In no other field of the law than in this is it more desirable that each case should be weighed in its proper factual setting. This admonition was lucidly expressed in the leading case of Hale v. Allinson, 1903, 188 U.S. 56, 77–78, 23 S.Ct. 244, 252, 47 L.Ed. 380: "Cases in sufficient number have been cited to show how divergent are the decisions on the question of jurisdiction. It is easy to say it rests upon the prevention of a multiplicity of suits, but to say whether a particular case comes within the principle is sometimes a much more difficult task. Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon

its own merits and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation, and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interests of any. The single fact that a multiplicity of suits may be prevented by this assumption of jurisdiction is not in all cases enough to sustain it. It might be that the exercise of equitable jurisdiction on this ground, while preventing a formal multiplicity of suits, would nevertheless be attended with more and deeper inconvenience to the defendants than would be compensated for by the convenience of a single plaintiff; and where the case is not covered by any controlling precedent the inconvenience might constitute good ground for denying jurisdiction."

This salutary counsel, offered half a century ago, has retained its vitality to the present day. Cook v. Fortson, 1946, 329 U.S. 675, 678, note 8, 67 S.Ct. 21, 91 L.Ed. 596. See also Bartson v. Mingo Drainage District, 8 Cir., 1922, 284 F. 52, 54, 55; 21 C.J. 72–73, Equity, section 48, F., 1, a; 30 C.J.S., Equity, § 42a, p. 366.

■ *(b) To Be Forced Into a Court of Equity By a Bill of Peace, The Various Claims Must Involve a Community of Interest Among the Claimants.*

■ While there is some divergence of opinion, the better view seems to be that a court of equity will not ordinarily compel a number of actual or prospective plaintiffs at law to come into equity as *defendants* under a bill of peace unless there is involved a definite community of interest among such law-plaintiffs.

■ The correct rule was succinctly stated by Mr. Justice, later Chief Justice Stone in Matthews v. Rodgers, 1932, 284

U.S. 521, 529-530, 52 S.Ct. 217, 221, 76 L.Ed. 447: "In general, the jurisdiction of equity to avoid multiplicity of suits at law is restricted to cases where there would otherwise be some necessity for the maintenance of numerous suits between the same parties, involving the same issues of law or fact. It does not extend to cases where there are numerous parties plaintiff or defendant, and the issues between them and the adverse party are not *necessarily* identical. (Many cases cited.)" (Emphasis supplied)

The foregoing passage was cited with approval in Di Giovanni v. Camden Fire Insurance Ass'n, 1935, 296 U.S. 64, 72, 56 S.Ct. 1, 80 L.Ed. 47.

So here, a fair reading of the complaint, which describes the "flow of water" as being "unprecedented in the recorded history of the Yuba River", indicates that the issues between the plaintiff and the 2,600 defendants, named and unnamed, will be far from "necessarily identical", either in law or in fact. The possible single question of contributory negligence, for example, might well present such variant facets as to disenable the Court, at this stage of the controversy, to hold that there will be a "necessary identity" of issues when the cases are tried on the facts.

In United States v. Bitter Root Development Co., 1906, 200 U.S. 451, 472, 479, 26 S.Ct. 318, 324, 50 L.Ed. 550, which was followed by the Ninth Circuit Court of Appeals in Aufdenkamp v. L'Herrison, 9 Cir., 1932, 56 F.2d 344, 346, the Court said:

"It is not necessary to cite many authorities for the proposition that where the main cause of action is of a legal nature, equity has no jurisdiction, provided the complainant has full and adequate remedy at law for the wrongs complained of.

\* \* \* \* \* \*

"Those persons who were guilty of the wrong must be made parties in either court, in order to bind them. Such alleged multiplicity is not avoided in one court more than in the other."

Among the jurists who have "set their faces like flint" against the invocation of equity in cases of this type is Chief Judge Parker, of the Fourth Circuit. In the leading case of Georgia Power Co. v. Hudson, 4 Cir., 1931, 49 F.2d 66, 69, 75 A.L.R. 1439, Judge Parker declared: "We have carefully examined the cases bearing upon the right of a court of equity to enjoin the prosecution of actions at law for the purpose of avoiding a multiplicity of suits; and we think the correct rule, and the one sustained by the weight of authority, is that community of interest among the several parties in the questions of law and fact involved is not sufficient to confer jurisdiction upon the court to enjoin the prosecution of such actions, *though they be brought against the same defendant and involve the same state of facts.* As a basis for such jurisdiction in equity, there must be some recognized ground of equitable interference, or some community of interest in the subject-matter of controversy, or a common right or title involved, or some common purpose in pursuit of a common adversary. None of these exists in the case of actions for damages brought by numerous plaintiffs, *although all may arise out of the same wrongful act and involve the same principles of law.*" (Emphasis supplied.)

Similarly vigorous expressions by the same judge are to be found in Broderick v. American General Corporation, 4 Cir., 1934, 71 F.2d 864, 870; Pacific Mut. Life Ins. Co. of California v. Parker, 4 Cir., 1934, 71 F.2d 872, 876; Pioneer Pyramid Life Ins. Co. v. Hughey, 4 Cir., 1935, 76 F.2d 524, 526.

See also Hale v. Allinson, supra, 188 U. S. at page 80, 22 S.Ct. 244; Kelley v. Gill, 1917, 245 U.S. 116, 120, 38 S.Ct. 38, 62 L.Ed. 185; Fidelity Trust & Safe Deposit Co. v. Archer, 3 Cir., 1910, 179 F. 32, 35-38, certiorari denied, 1910, 217 U.S. 606-607, 30 S.Ct. 697, 54 L.Ed. 900; Kansas City Southern Ry. Co. v. Quigley, C.C. Ark., 1910, 181 F. 190, 205; Pittsburgh & W. V. Ry. Co. v. United States, D.C.Pa., 1924, 6 F.2d 646, 649; John N. Price & Sons v. Maryland Casualty Co., 1942, D.C. N.J., 2 F.R.D. 408, 411; Atchison, T. & S. F. Ry. Co. v. Ross, D.C.Mo., 1950, 88 F.

Supp. 451, 455–456; 19 Am.Jur., Equity, pp. 92–94, sections 79–80.

■ *(c) The Right to a Jury Trial is Not to be Frittered Away by the Needless Recourse to Equity, On the Ground of Avoiding a Multiplicity of Suits.*

The Seventh Amendment of the Constitution of the United States provides: ."In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, * * *."

■ The refinements of legal logic regarding bills of peace, multiplicity of suits, and the ability of equity to try cases without the intervention of a jury, should not be permitted to lure us from the grass roots of Constitutional law. Courts should constantly bear in mind the admonition of Mr. Justice Brewer in Walker v. New Mexico & Southern Pacific R. R. Co., 1897, 165 U.S. 593, 596, 17 S.Ct. 421, 422, 41 L.Ed. 837. He regarded the effect of the Amendment as requiring that "questions of fact in common-law actions shall be settled by a jury, and that the court shall not assume, directly *or indirectly,* to take from the jury or to .itself such prerogative." (Emphasis supplied.)

■ If this word of caution means anything at all, it means that no legal legerdemain should be permitted to convert what is *essentially* an action at law into a suit in equity by the simple expedient of resorting to a bill of peace, except in those comparatively rare cases where a court of law cannot afford as speedy, complete, and adequate a remedy as can equity. Such an exceptional case, as will be shown hereafter, is not presented here.

In Broderick v. American General Corporation, supra, 71 F.2d at page 870, Judge Parker said: ·"And where to the lack of substantial advantage is added the constitutional requirement of trial by jury in actions at law, the argument against equity jurisdiction, *merely because there are a number of plaintiffs and defendants and a common question of law or fact, is conclusive.* It must be manifest that an action at law does not lose its character as such because another action at law exists in

favor of the same plaintiff or against the same defendant; for the character of an action is determined by the questions which it involves, not by the fact that other actions involve the same questions. It would be absurd to say that a suit against one stockholder to enforce his statutory liability is at law with right of jury trial guaranteed, but that, if by chance other persons with whom he is in no way connected are also liable, he may be sued with them in equity and a jury trial denied him. The guarantees of the ·Constitution are substantial rights of the citizen which may not be thus whistled away for reasons of supposed convenience." (Emphasis supplied.)

See also Pioneer Pyramid Life Ins. Co. v. Hughey, supra, 76 F.2d at page 526; and cf. Hargrove v. American Cent. Ins. Co., 10 Cir., 1942, 125 F.2d 225, 228.

Stripped of their equity trappings, the issues here are "basically legal in their nature," to borrow the language of Judge Murrah in the Hargrove case, just cited. Those issues deal with the present plaintiff's alleged negligence in the building of a temporary dam across the north channel of the Yuba River, and the damage caused by its operations. Questions of negligence and damages are peculiarly and traditionally jury questions.

■ *(d) The Granting of a Bill of Peace Rests in the Sound Discretion of a Court of Equity.*

■ While the avoidance of a multiplicity of suits at law is a recognized ground for equitable relief, the award of such a remedy is not controlled by rigid rules, regardless of consequences.

In Di Giovanni v. Camden Fire Insurance Assn., supra, 296 U.S. at page 70, 56 S.Ct. at page 4, the Court said: "It rests in the sound discretion of a court of equity, and a theoretical inadequacy of the legal remedy may be outweighed by other considerations." See also 21 C.J. 82, Equity, section 51 d; 30 C.J.S., Equity, § 42d, p. 371–372.

Some of the "other considerations" referred to in the Di Giovanni case, supra,

have already been discussed. We turn now to the final one.

■ *2. Equity Will Not Assume Jurisdiction Where, as Here, Consolidation of Actions at Law Will Answer the Same Purpose.*

As was pointed out by Mr. Justice Peckham in the Bitter Root Development Co. case, supra [26 S.Ct. at page 327], the interested parties must appear in either the equity or the law action. No sleight of hand can cause them to vanish. The very case at bar strikingly brings home this fact; for here and now we already have more than 2,500 defendants, named or unnamed, with possibly more to come. The problem is not simplified by the mere change of designation: for "multiplicity of suits" we have "multiplicity of parties". The problem is deeper than one of mere semantics.

Rule 42(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., reads as follows: "(a) Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

It will be noticed that the Rule not only authorizes consolidation when, as here, a common question of law or fact is presented, but it also permits the court to make "such orders" as may be necessary to expedite the proceedings and to save unnecessary costs. Assuredly, under these liberal provisions, the intervention of equity by means of a "bill of peace" is quite needless.

In this connection, it should be borne in mind that the defendants herein are quite willing that the Court, in its discretion, shall order a consolidation of the cases.

■ As in the case of granting a bill of peace, a Federal court has a wide discretion in ordering a consolidation of cases at law. The modern tendency is to grant consolidation freely. Broderick v. American General Corporation, supra, 71 F.2d

at pages 870 and 872; Gillette Motor Transport v. Northern Oklahoma Butane Co., 10 Cir., 1950, 179 F.2d 711, 712; Brush v. Harkins, D.C.Mo., 1949, 9 F.R.D. 604, 606. See also Bartholomew v. Bartholomew, 1942, 56 Cal.App.2d 216, 233, 132 P. 2d 297; 21 C.J. 73, Equity, sec. 48, F., 1, a; 30 C.J.S. 366, Equity, section 42a; 43 C.J.S., Injunctions, § 38g, p. 477.

■ *3. A Government Contractor Has No Immunity for Acts of Negligence.*

As a result of this Court's views regarding the prayer for a "bill of peace" and because it is believed that a consolidation of the cases at law will expedite the conduct of the litigation as much as is possible, most of the plaintiff's other contentions fall of their own weight. There remain, however, a few other points as to which, in view of the definite likelihood that the controversy, on its merits, will again come before this Court, some comment may be helpful.

As we have seen, one of the prayers of the complaint asks for "declaratory relief with respect to plaintiff's rights under the statutes pursuant to which * * * federal permits were issued to plaintiff".

■ Ordinarily, the declaratory judgment statute should not be invoked to try a controversy piecemeal. Ætna Casualty & Surety Co. v. Quarles, 4 Cir., 1937, 92 F.2d 321, 325; Hammett v. Warner Brothers Pictures, 2 Cir., 1949, 176 F.2d 145, 149; Gable-Skogmo, Inc. v. McNair Realty Co., D.C. Mont., 1951, 98 F.Supp. 440, 443. But as has just been indicated, some enlightenment now might be time-saving.

The plaintiff's position regarding the responsibility of a government contractor for damage occurring while he is carrying out his contract is not altogether consistent. In one paragraph of its opening brief, the plaintiff contends that "any claim that flood damage was caused, for example, by 'negligence' in so building a dam as to change or deflect the river current, is nonjusticiable against the United States," and "A claim nonjusticiable against the government or its officers is equally nonjusticiable against a government contractor or permit-holder".

In the very next paragraph, however, the assertion is seriously made that "the defense * * * does not rest upon any claim that the permit creates an exemption or immunity; the point is that the permit *creates no liability* which would not otherwise exist". This apparent inconsistency pervades both briefs of the plaintiff, and was continued in the oral argument.

Be that as it may, the law is well settled that, while a government contract does not create any *new* liability on the part of the contractor in favor of third parties, it is not true that "A claim nonjusticiable against the government or its officers is equally nonjusticiable against a government contractor or permit-holder".

In support of its contention in favor of non-liability, the plaintiff quotes the following language from Gulf Refining Co. v. Mark C. Walker & Son Co., 6 Cir., 1942, 124 F.2d 420, 425–426, certiorari denied, 1942, 316 U.S. 682, 62 S.Ct. 1268, 86 L.Ed. 1755:

"There is no substantial controversy with respect to the legal principles applicable to the issue presented. The appellee concedes that a contractor or subcontractor doing work for the government in accordance with its requirements is not liable to a third person for its incidental effect upon his property, and that there is no presumption of negligence.

    \*     \*     \*     \*     \*     \*

"* * * As we have already pointed out, there is no controversy with respect to the nonliability of a government contractor for incidental or consequential damage when he does work for the government in accordance with its requirements."

Had the plaintiff pursued the first portion of its quotation further, however, we should have seen that the text continues: "It (the appellee) urges, however, that *immunity does not extend to liability for damage which results from the contractor's negligence* (Case cited), and this the appellant does not dispute. The issue therefore resolves itself upon the principal question in the case—the denial of Weaver's motion for a directed verdict—to whether there was substantial proof of the defendant's *negligence.*" (Emphasis supplied.) See also Converse **v.** Portsmouth Cotton Oil Refining Corp., 4 Cir., 1922, 281 F. 981, 986, certiorari denied, 1922, 260 U.S. 724, 43 S.Ct. 13, 67 L.Ed. 482.

As we have seen, the Government permit in the instant case specifically disclaims any intention to ."authorize any injury to public or private property," etc.

   ▆▆▆   *4. This Court Has No Jurisdiction Whatever Over the Claims of $3,000 or Less*

A table appearing in the plaintiff's reply memorandum reveals that seven actions at law have thus far been filed against it in the state court. Of these actions, four involve a total of 38 claims of $3,000 or less. As to those 38 claims, this Court does not possess jurisdiction, discretionary or otherwise.

The plaintiff insists, however, that *"The smaller claims are therefore within the Court's auxiliary or ancillary jurisdiction regardless of diversity of citizenship or amount in controversy."*

This Court believes that the plaintiff's theory is unsound. In the instant case, no claim is "auxiliary" or "ancillary" to any other. No cause of action is subordinate: all are co-ordinate. The amount of the demand is no criterion: the smallest stands on precisely the same footing as the largest. There exists here, as it were, a "democracy": each claim, be it modest or pretentious, is "free and equal".

In the leading case of Lion Bonding Co. v. Karatz, 1923, 262 U.S. 77, 85–86, 43 S. Ct. 480, 483, 67 L.Ed. 871, the Court said: "The only ground of jurisdiction alleged is diversity of citizenship. The facts specifically stated show that the amount in controversy was less than $3,000. Plaintiff's claim against the company was $2,100. He prayed that this debt be declared a first lien on the assets within the state. His only interest was to have that debt paid. The amount of the corporation's assets, either within or without the state, is of no legal significance in this connection. Nor is the amount of its debts to others. The case is not of that class where the amount in controversy is measured by the value of the property involved in the litigation. (Cases

cited) Nor is it like those cases in which several plaintiffs, having a common *undivided* interest, unite to enforce *a single title or right,* and in which it is enough that their interests collectively equal the jurisdictional amount. (Case cited) *In the case at bar, if several creditors of the company, each with a debt less than $3,000, had joined as plaintiffs, the demands could not have been aggregated in order to confer* jurisdiction. (Cases cited.)" (Emphasis supplied.)

See also Ballard Paving Co. v. Mulford, 1879, 100 U.S. 147, 148, 25 L.Ed. 591; Gibson v. Shufeldt & Co., 1887, 122 U.S. 27, 39, 7 S.Ct. 1066, 30 L.Ed. 1083; Walter v. Northeastern R. R. Co., 1893, 147 U.S. 370, 374, 13 S.Ct. 348, 37 L.Ed. 206; Chamberlin v. Browning, 1900, 177 U.S. 605, 608–609, 20 S.Ct. 820, 44 L.Ed. 906.

Nor can equity be resorted to in order to avoid this jurisdictional money-limitation. In Di Giovanni v. Camden Fire Insurance Association, supra, 296 U.S. at pages 69–70, 56 S.Ct. at page 4, 80 L.Ed. 47, the Court pointed out: "But want of the jurisdictional amount in controversy which deprives a federal court of its authority to act at law is not ground for invoking its equity powers. The statute forbids resort to equity in the federal courts when they afford adequate legal relief. It does not purport to command that equitable relief shall be given in every case in which they fail to do so. Plainly it does not so command when the want of legal remedy is due to the express prohibition of Congress, applicable alike to suits at law and in equity. (Case cited.)"

### 5. *Conclusion*

Accordingly, the Court holds that the plaintiff has failed to show the necessity for the intervention of equity in order to prevent a multiplicity of suits; that the consolidation of the pending and the threatened actions at law will, under our liberal Federal Rules, adequately expedite the conduct of the litigation; that a Government contractor has no immunity for acts of negligence committed in carrying out a Federal contract, particularly when the very terms of his contract specifically nega-

tive the existence of any such immunity; and that under the pleadings now before it, this Court has no jurisdiction, either in equity or at law, over the claims of $3,000 or less.

The complaint is therefore dismissed, without prejudice to the plaintiff's right to urge any defenses that it may properly present in any future action or actions at law.