YUBA CONSOLIDATED GOLD FIELDS
v. KILKEARY et al.

No. 13370.

United States Court of Appeals
Ninth Circuit.

Aug. 7, 1953.

Eugene M. Prince, Robert M. Searls, Allan R. Moltzen, Pillsbury, Madison & Sutro, San Francisco, Cal., Harry B. Seymour, Downey, Brand, Seymour & Rohwer, Sacramento, Cal., Southall R. Pfund, San Francisco, Cal., for appellants.

Edward F. Treadwell, Reginald S. Laughlin, San Francisco, Cal., Charles A. Wetmore, Jr., Marysville, Cal., Colin C. Kelley, Burton J. Goldstein, Goldstein, Barcelous & Goldstein, San Francisco, Cal., Hugh W. Ferrier, San Mateo, Cal., E. L. Gray, Arthur E. Hewitt, Marysville, Cal., L. Rodney Hollingshead, Sacramento, Cal., for appellees.

Before STEPHENS and ORR, Circuit Judges, and BYRNE, District Judge.

BYRNE, District Judge.

The appellant, as plaintiff below, filed a complaint in the nature of a "bill of peace" seeking to avoid a multiplicity of legal actions by determining in one equity suit the liability asserted in hundreds of claims for damages resulting from floods of the Yuba River in the winter of 1950. The complaint was dismissed for failure to state a claim upon which relief can be granted and this appeal followed.

The material allegations of the complaint may be summarized as follows: Plaintiff is a citizen of the State of Maine; defendants are all citizens of the State of California; the amount in controversy exceeds $3,000; since March 18, 1905, the plaintiff has been engaged in mining gold by the dredging process in Yuba County; during the month of November, 1950, a series of storms brought heavy precipitation to the section of the Sierra Nevada from the Feather River on the north to the Kern River on the south; the rainfall caused the Yuba River to carry a greater volume of water than had ever before passed down the stream during its recorded history; the flood waters overflowed the south natural banks of the river and broke the south training wall—a cobble embankment that the plaintiff had constructed about the year 1925 as a part of approved projects of flood and debris control; the river's overflow spread over an area of approximately 100 square miles in Yuba County which included large acreages of farm lands, about 2669 separate ownerships of real property, and more than seven residential and business communities; the flood caused an unascertainable amount of heavy damage; claimed items include damage to agricultural lands, orchards, crops, highways, farm produce, machinery, walls and foundations of buildings, furnishings and personal effects in dwellings, automobiles, business, residential and industrial property and lost profits due to interruption of business; a state of emergency was declared in Yuba County, lasting from November 20, 1950, to December 11, 1950, during which about 8,000 persons were forced from their homes for varying lengths of time and received flood and disaster relief from the American Red Cross and others in Marysville; during and after the flood the charge was publicly made that the plaintiff's dredging in the Yuba River had caused the flood and that the plaintiff was responsible for the damage; during November and December, 1950, meetings were held at which various defendants discussed ways and means of prosecuting their claims against the plaintiff, and agreements were circulated providing for payment by claimants of 1% of their respective claims into a fund to be expended for the prosecution of actions against the plaintiff; six actions involving more than one hundred claimants and $853,964.98 [1] in claims have been filed against the plaintiff in the Superior Court of Yuba County, California, in which the claimants assert that the plaintiff's operations in the Yuba River were responsible for the flood and the resulting damages, which assertions are unfounded; plaintiff's operations had no causal connection with the flood, were at all times conducted with due care in accordance with good engineering practice and in conformity with the requirements of Federal permits duly issued by statutory authority, and were part of projects approved by statute for debris and flood control that have been in progress on the Yuba River for more than 50 years; the potential claims of the unnamed defendants may run into sums aggregating millions of dollars and if the claims should be asserted and established in amounts comparable with the damage prayers of the suits on file, the resulting liability would exceed the value of the plaintiff's assets and would be beyond its ability to pay.

1. At the time of the oral argument before this court, the appellant filed a memorandum with respect to the then pending actions at law which disclosed 22 actions pending by 1022 plaintiffs with a total prayer of $2,834,595.08. Subsequently counsel informed the court, by letter, that about 100 of the pending claims have been concluded by compromise and approximately 25 new claims asserted and that there are still pending against appellant actions involving more than 900 claimants for alleged damages exceeding $2,000,000.

It is further alleged that the plaintiff has no adequate remedy at law; unless relief in equity is granted plaintiff will be subjected to a multiplicity of actions by the defendants; such actions will involve identical questions of law and fact with respect to the alleged liability of plaintiff; such actions involve damage claims beyond plaintiff's ability to pay and the defendants, therefore, have a common interest in pending and proposed litigation to enforce such claim; and the trial of such actions, potentially numbering hundreds or thousands, cannot be practically or fairly conducted at law.

The prayer of the complaint asks that the court permanently enjoin the defendants from the prosecution, "except in this court and cause", of any suit against the plaintiff for the recovery of any damage alleged to have been caused by the flood; that the court hear and determine all claims of the defendants against the plaintiff and decree such claims to be without right; that declaratory relief be granted "with respect to plaintiff's rights under the statutes pursuant to which said federal permits were issued to plaintiff".

### Jurisdiction of the Subject Matter and "Equity Jurisdiction".

 This case is permeated with serious questions relating to jurisdiction which requires, at the threshold of our discussion, that we point out the distinction between the term "jurisdiction" in its strict sense, and as commonly used in equity jurisprudence. "Jurisdiction", in the strict meaning of the term, is the *power* to hear and determine the subject matter of the class of actions to which the particular case belongs. Reference to "equity jurisdiction" does not relate to the power of the court to hear and determine a controversy but relates to *whether it ought to assume* the jurisdiction and decide the cause. The distinction is of the utmost importance here, as this case involves problems of both "equity jurisdiction" and "jurisdiction" in its strict sense.

The trial court's jurisdiction of *this* case is not disputed by any of the parties. The motions to dismiss were on the ground of failure to state a claim upon which relief can be granted.

The suits in equity of which federal courts may exercise jurisdiction constitute that body of remedies, procedures, and practices which had been evolved in the English Court of Chancery prior to the adoption of the First Judiciary Act, except as modified by Congress.[2] The granting of relief against multiplicity of legal actions in appropriate situations is part of that historic jurisdiction.[3]

The general doctrine that equity will take cognizance of a matter to prevent a multiplicity of suits is asserted in innumerable decisions, but when one seeks an answer to the question of the extent of the doctrine he finds uncertainty and a direct conflict of decisions.

 Much of the confusion and uncertainty surrounding the doctrine flows from the failure to recognize that its extent and limitations are not identical in every class of cases which furnishes an occasion for its exercise. The class of cases with which we are here concerned is that

2. Matthews v. Rodgers, 1932, 284 U.S. 521, 529, 52 S.Ct. 217, 76 L.Ed. 447; Sprague v. Ticonic National Bank, 1939, 307 U.S. 161, 164, 59 S.Ct. 777, 83 L.Ed. 1184.

3. Ogden City v. Armstrong, 1897, 168 U.S. 224, 18 S.Ct. 98, 42 L.Ed. 444; Hale v. Allinson, 1903, 188 U.S. 56, 23 S.Ct. 244, 47 L.Ed. 380; City of Cleveland v. Cleveland City Railway Co., 1904, 194 U.S. 517, 24 S.Ct. 756, 48 L.Ed. 1102; Bitterman v. Louisville & Nashville R. R. Co., 1907, 207 U.S. 205, 28 S.Ct. 91, 52 L.Ed. 171; Wilson v. Illinois Southern Ry. Co., 1924, 263 U.S. 574, 577, 44 S.Ct. 203, 68 L.Ed. 456; Lee v. Bickell, 1934, 292 U.S. 415, 421, 54 S.Ct. 727, 78 L.Ed. 1337; Di Giovanni v. Camden Fire Ins. Ass'n, 1935, 296 U.S. 64, 56 S.Ct. 1, 80 L.Ed. 47; Lake Charles Rice Milling Co. v. Pacific Rice Growers' Ass'n, 9 Cir., 1924, 295 F. 246; First State Bank v. Chicago, R. I. & P. R. Co., 8 Cir., 1933, 63 F.2d 585, 590, 90 A.L.R. 544; Montgomery Light & Water Power Co. v. Charles, D.C.Ala.1919, 258 F. 723; Pomeroy Equity Jurisprudence, 5th ed. 1941, Pt. 1, Ch. II, Sec. IV.

class wherein a number of persons have separate and individual claims and rights of action against the same party arising from a common cause or transaction and the law defendant seeks to have all of the claims settled in a single suit in equity.

Equity jurisdiction in this class of cases will not be recognized unless there is a common bond or interest held by the number of persons against the single person. The character and essential elements of this common bond or interest constitute the fundamental question upon which the recognition of the equity jurisdiction rests, and it is in the solution of this question that most of the conflict of opinion among the courts has arisen.

Is it necessary that the common bond or interest be a community of interest in the subject matter of the controversy to such an extent as to create *a privity between the individual members of the group,* as well as between each of them and the single adversary party? Or is it sufficient that the common bond or interest consists solely in the fact that the claims of the members of the group have arisen from the same source and all involve and depend upon similar questions of law and fact, so that while the same positive relation exists between the single party on the one side and *each* individual member of the group on the other, *no such legal relation exists between the individual members themselves?*

The leading case supporting the restricted view is Tribette v. Illinois C. R. Co., 1892, 70 Miss. 182, 12 So. 32, 19 L.R.A. 660, which has been followed by a number of courts including the Fourth Circuit.[4] This restricted view has never been approved by the Supreme Court and is against the great weight of authority.

The majority view is succinctly stated by Pomeroy:[5] " * * * notwithstanding the positive denials by some American courts, the weight of authority is simply overwhelming that the jurisdiction may

and should be exercised, either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no 'common title,' no 'community of right' or of 'interest in the subject-matter,' among these individuals, but where there is and because there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body."

The appellees rely upon Hale v. Allinson, 1903, 188 U.S. 56, 23 S.Ct. 244, 252, 47 L. Ed. 380. The case does not support their position. It is true that that court denied a bill of peace, but the denial was on the ground that each of the defenses of the multiple parties depended upon different facts. There is no dispute that common questions of law and fact must exist before a court of equity will interfere. The question is whether in addition to common questions of law and fact there must exist a *common title or community right or interest in the subject matter among the defendants.* The Hale v. Allinson court said such a community interest was not necessary, that "We are not disposed to deny that jurisdiction on the ground of preventing a multiplicity of suits may be exercised in many cases in behalf of a single complainant against a number of defendants, although there is no common title nor community of right or interest in the subject-matter among such defendants, but where there is a community of interest among them in the questions of law and fact involved in the general controversy." In Bitterman v. Louisville & Nashville R. R., 1907, 207 U.S. 205, 28 S.Ct. 91, 98, 52 L.Ed. 171, the Supreme Court sustained a bill of peace and cited Hale v. Allinson for the principle that equity jurisdiction would be recognized where "the relief sought against each defendant was the

---

4. Georgia Power Co. v. Hudson, 4 Cir., 1931, 49 F.2d 66, 75 A.L.R. 1439; Broderick v. American General Corporation, 4 Cir., 1934, 71 F.2d 864, 94 A.L.R. 1359; Pacific Mutual Life Ins. Co. of California v. Parker, 4 Cir., 1934, 71 F. 2d 872; Pioneer Pyramid Life Ins. Co. v. Hughey, 4 Cir., 1935, 76 F.2d 524.

5. Pomeroy Equity Jurisprudence, 5th ed. 1941, Vol. I, sec. 269.

same, and the defenses which might be interposed were common to each defendant and involved like legal questions." [6]

There is an important distinction between the recognition of equity jurisdiction as authorized and the actual exercise of such jurisdiction. If the bill alleges a situation authorizing a bill of peace, equity jurisdiction will be recognized and a motion to dismiss will be denied. However it does not necessarily follow that equity jurisdiction will be exercised. Whether it will be exercised rests in the sound discretion of the chancellor. The basis of all equitable rules is the principle of discretionary application.[7] In the instant case the trial court thought that there must exist among the defendants a common title or community right or interest in the subject matter. Under this belief, the court granted a motion to dismiss for failure to state a claim upon which relief can be granted. The bill did state facts sufficient to authorize the intervention of equity and an allegation of such a community of interest was not required. On a motion to dismiss the facts properly pleaded in the bill must be taken as established; therefore the motion to dismiss should have been denied. A ruling on a motion to dismiss for failure to state a claim upon which relief can be granted is a ruling on a question of law and does not admit the exercise of discretion.

### Exercise of Discretion.

Equity jurisdiction being recognized, the question whether it will be exercised rests in the sound discretion of the chancellor. It must be a legal discretion based on principles of law and not on the arbitrary will of the chancellor.[8] The discretion of the chancellor is directed primarily to the question of whether there is a plain, adequate and complete remedy at law.

The relief Yuba is here seeking is in the form of an injunction enjoining the defendants from the prosecution, except in this proceeding, of any claim for damages alleged to have been caused by the flood. If the chancellor in his discretion, determines that there is no plain, adequate remedy at law and that this is a proper case for the exercise of equity jurisdiction to prevent a multiplicity of suits, he should grant the injunction and proceed to the disposal of all the litigation and claims in this single equity suit. If he determines that this is not a proper case for the exercise of equity jurisdiction he should withhold such exercise, deny the injunction and leave the parties to their legal remedies, thus ending this particular proceeding.

Some of the factors to be considered by the chancellor are referred to in Hale v. Allinson, supra, where the Supreme Court said each case "must, as we think, be decided upon its own merits and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation, and will be an actual convenience to all parties, and will not unrea-

6. To like effect see Ogden City v. Armstrong, 1897, 168 U.S. 224, 18 S.Ct. 98, 42 L.Ed. 444; Di Giovanni v. Camden Fire Ins. Ass'n, 1935, 296 U.S. 64, 56 S. Ct. 1, 80 L.Ed. 47; Lake Charles Rice Mill. Co. v. Pacific Rice Growers Ass'n, 9 Cir., 1924, 295 F. 246; Montgomery Light and Water Power Co. v. Charles, D.C.Ala.1919, 285 F. 723, where the court sustained a bill of peace against 130 actions at law claiming flood damage under circumstances similar to those in the case at bar; "Bills of Peace with Multiple Parties" by Professor Chafee, (45 Harvard Law Review (1932) 1297).

7. Cf. Gee v. Pritchard, 2 Swanst. 402, 36 Eng.R. 670 (1818), in which Lord Eldon stated: "The doctrines of this court ought to be as well settled and made as uniform almost as those of the common law, laying down fixed principles, but taking care that they are to be applied according to the circumstances of each case."

8. Union Tool Co. v. Wilson, 1922, 259 U.S. 107, 112, 42 S.Ct. 427, 66 L.Ed. 848.

sonably overlook or obstruct the material interests of any. The single fact that a multiplicity of suits may be prevented by this assumption of jurisdiction is not in all cases enough to sustain it. It might be that the exercise of equitable jurisdiction on this ground, while preventing a formal multiplicity of suits, would nevertheless be attended with more and deeper inconvenience to the defendants than would be compensated for by the convenience of a single plaintiff; and where the case is not covered by any controlling precedent the inconvenience might constitute good ground for denying jurisdiction."

Although the jury trial policy should be considered where the issues are basically legal in their nature, it must be borne in mind "that to sustain a suit in equity in the federal courts it must appear there is no plain, adequate, and complete remedy at law, and, if the remedy at law is not adequate, the right to a jury trial does not exist." [9] The possibility of consolidating the actions at law has a direct bearing on the question of the adequacy of the legal remedy, and the question of removal of all of the actions at law to the federal court, in turn, affects the matter of consolidation. The trial court was of the belief that it could not obtain jurisdiction, either in equity or at law, over the claims of $3,000 or less now pending in the state court.

### Claims of $3,000 or Less.

Of the suits originally filed in the state court, several have been removed to the federal court on the ground of diversity of citizenship and the required jurisdictional amount. Yuba is a corporation organized under the laws of the State of Maine, and apparently diversity exists between Yuba and all of the claimants, but the jurisdictional amount is not present with respect to all individual claims.

The claims of $3,000 or less which have

been joined with claims of more than $3,000 may be removed to the federal court for trial either at law or in equity under the provisions of 28 U.S.C.A. § 1441(c).[10] However, in at least two of the suits involving seven claims, the claims of $3,000 or less are not joined with claims in excess of $3,000 and present a separate problem.

Yuba contends that these suits, wherein no claim exceeds $3,000, may not be removed to the federal court, and therefore all claims cannot be consolidated for trial as actions at law, but that the jurisdiction shown in the equity complaint extends to all claimants joined therein and that such jurisdiction as to all claimants can be effectuated only in this equity suit.

One group of claimants takes the position that all of the suits including those where all claims are less than $3,000 may be removed to the federal court and consolidated for trial, thus obviating the need for a bill of peace.

Another group of claimants takes the position that the District Court would not have jurisdiction of the claims of $3,000 or less either as actions at law or in an equitable proceeding to prevent a multiplicity of suits. The trial court agreed with this group.

With respect to the removal of claims for trial as actions at law, as distinguished from an equitable proceeding to prevent a multiplicity of suits, the District Court would not have jurisdiction in those cases where no claim exceeds $3,000. The group of claimants contending to the contrary assert, "The whole value of the property, the enjoyment of which is at issue, is the measure of the value of the matter in controversy, for the purpose of determining the jurisdictional amount in a case removed from a state to a federal court." The principle stated is correct, but the manner in which they attempt to apply it is erroneous. Where a plaintiff in a state court is seeking

9. First State Bank v. Chicago, R. I. & P. R. Co., 8 Cir., 1933, 63 F.2d 585, 590, 90 A.L.R. 544.

10. "(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

to recover $1,000 in damages, the $1,000 is the only property "the enjoyment of which is at issue". Other actions that may be pending would have no relation to the action sought to be removed unless and until they were joined in a single equity proceeding for the purpose of preventing a multiplicity of suits.

As we have pointed out, the avoidance of a multiplicity of suits is itself a ground of equitable jurisdiction. Once the bill in equity has been filed the court looks, not to the value of each individual claim asserted against the plaintiff, but to the value of the right which the plaintiff seeks to protect, i. e., the right to be free from the alleged "unjustified" claims. Here we have diversity of citizenship and claims in excess of a million dollars, many of which individually exceed $3,000. To hold that equitable relief, which otherwise would be available to the plaintiff, must be denied him because a few of the individual claims are less than $3,000, would be contrary to every principle of equity.

Where, as here, the District Court has jurisdiction to entertain a suit in equity to prevent a multiplicity of suits, its jurisdiction extends to every facet of the controversy. "A district court acquires jurisdiction of a case or controversy as an entirety, and hence may, as an incident thereto, possess jurisdiction of matters of which it would not otherwise have cognizance were they independently presented. * * * If the court has jurisdiction of the principal action, it also has cognizance of any ancillary proceeding therein, regardless of the citizenship of the parties, the amount in controversy or any other factor that would ordinarily determine jurisdiction." [11] In Virginia-Carolina Chemical Co. v. Home Ins. Co., 4 Cir., 1902, 113 F. 1, fourteen separate actions at law had been filed in the state court and all removed to the federal court except one which involved less than $2,000, the then jurisdictional amount. A bill of peace was brought in the federal court and the court sustained jurisdiction of the entire controversy including the claim for less than $2,000, stating, "The main object and purpose of this bill is to prevent a multiplicity of suits, all involving the same legal questions, founded upon similar issues of fact; and for this reason it it ancillary to the actions at law."

The case at bar does not come within the rule that where claims are separate they cannot be aggregated to determine jurisdictional amount. Here the jurisdiction over the smaller claims is ancillary to jurisdiction existing as to the larger claims in the bill of peace and to the bill of peace itself.

There is considerable discussion in the briefs of the parties and in the memorandum opinion of the trial court [12] with respect to whether the damages resulted from the negligence of Yuba or were incidental or consequential damages flowing from work performed for the government in accordance with its requirements, by a government contractor. This is a question of fact to be determined by the court in a trial on the merits regardless of whether the trial is at law or in equity. We do not reach that question in the present posture of the case.

The appellant suggests that this court is in as good a postion as the trial court to determine whether equity jurisdiction should be exercised. We do not agree. Where equity jurisdiction to entertain a bill of peace is authorized, the question of whether it will be exercised rests in the sound discretion of the chancellor. Because of an imperfect perception of the principles involved, the trial court thought that equity jurisdiction could not be recognized, and dismissed the complaint for failure to state a claim upon which relief can be granted. It was a ruling on a question of law and resulted in a failure to exercise discretion.

The complaint, accepting the facts properly pleaded as established, does state a claim authorizing the exercise of the trial court's discretion. Whether equity jurisdiction should be assumed to prevent a

11. Barron and Holtzoff, Vol. I, section 23, page 43.

12. Yuba Consolidated Gold Fields v. Kilkeary, D.C.N.D.Cal.1952, 102 F.Supp. 999.

multiplicity of suits, is a question for the trial court. The determination must rest on sound principles of law and the court may require such proof as shall be deemed necessary for the proper exercise of its discretion. We therefore must reverse and remand the case for further proceedings in the trial court not inconsistent with the views expressed here.